STATEWIDE GRIEVANCE COMMITTEE v.
ZBIGNIEW S. ROZBICKI
(14101)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and F. X. HENNESSY, Js.

Argued March 21—decision released July 9, 1991

*Wesley W. Horton,* with whom were *Francis J. MacGregor* and *Paul J. McQuillan,* for the appellant (defendant).

*Seymour N. Weinstein,* for the appellee (plaintiff).

COVELLO, J. This is an appeal from a judgment rendered on a presentment in which the Superior Court concluded that the defendant was guilty of professional misconduct. The procedural facts are as follows: on November 18, 1985, Helen Huybrechts filed a complaint with the Litchfield Grievance Panel alleging, inter alia, that the defendant (1) was suing her for legal fees she had not agreed to pay, (2) had purchased her home and two parcels of land for less than fair value, and (3) had received funds due her from a dissolution proceeding without accounting for them. On November 19, 1987, after the grievance panel had found probable cause, the Statewide Grievance Committee (grievance committee) conducted a hearing and determined that the defendant was guilty of professional misconduct. The grievance committee directed that a presentment be filed against the defendant in Superior Court. On May 10, 1988, counsel for the grievance committee filed a presentment pursuant to Practice Book § 31 alleging that the defendant committed professional misconduct. The presentment, in addition to describing the attendant factual circumstances, referred to specific sections of the Code of Professional Responsibility in

describing the defendant's misconduct.[1] On June 10, 1988, the defendant filed a motion to dismiss the presentment based upon the failure of the subcommittee of the grievance committee to render a decision within ninety days of the probable cause determination as required by General Statutes § 51-90g (c).[2] The trial court granted the motion. In response to an appeal by the grievance committee, we vacated the judgment of the trial court granting the motion to dismiss and remanded the matter for a determination of the merits of the complaint. *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 246, 558 A.2d 986 (1989). On June 5, 1990, following lengthy hearings, the trial court filed its memorandum of decision, concluding that, under the totality of circumstances, the defendant was guilty of professional misconduct.[3] The trial court ren-

---

[1] The presentment alleged that the defendant had violated DR 1-102 (A) (4), (5) and (6), DR 5-104, and DR 7-101 (A) (3) of the Code of Professional Responsibility.

DR 1-102 (A) provides in part: "A lawyer shall not . . .

"(4) Engage in illegal conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

DR 5-104 provides in part: "(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

DR 7-101 (A) (3) provides: "A lawyer shall not intentionally . . .

"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102 (B)."

[2] General Statutes § 51-90g (c) provides in part: "The subcommittee shall conclude any hearing or hearings and shall render its proposed decision not later than ninety days from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee. The subcommittee may file a motion for extension of time not to exceed thirty days with the state-wide grievance committee which shall grant the motion only for good cause shown."

[3] Code of Professional Responsibility DR 5-104, DR 1-102 (A) (6), and DR 7-101 (A), see footnote 1, supra.

The trial court's memorandum of decision referred to specific sections of the Code of Professional Responsibility. In a presentment for attorney

dered judgment suspending the defendant's right to practice law for three months. The defendant again appealed. We transferred the matter to ourselves pursuant to Practice Book § 4023 and now affirm.

The trial court found that the complainant and the defendant had maintained a social and professional relationship from 1978 to 1985 during which time the defendant had undertaken to represent the complainant in a marital dissolution action, had lent money to the complainant for payment of her mortgage and personal needs, and had advanced funds for her litigation expenses. On October 31, 1980, the complainant quitclaimed 22 acres of land to the defendant in payment of legal services

misconduct, reference to specific sections of the Code of Professional Responsibility is not required. Because of its sui generis character, the reference to specific rules of professional conduct within the context of a presentment does not, unlike a criminal statute, constitute the only basis for a finding of guilt, but serves rather to assist the trial court in making its own conclusions as to whether, under the totality of the circumstances, professional misconduct has occurred. The Code of Professional Responsibility, in force at the time of the defendant's purchase of the complainant's home, did not attempt to define the full measure of behavior that would constitute misconduct. In its preamble it stated: "The Code of Professional Responsibility *points the way* to the aspiring and provides standards by which to judge the transgressor. Each lawyer must find within his own conscience the touchstone against which to test the extent to which his actions should rise above minimum standards. But in the last analysis it is the desire for the respect and confidence of the members of his profession and of the society which he serves that should provide to a lawyer the incentive for the highest possible degree of ethical conduct. The possible loss of that respect and confidence is the ultimate sanction. So long as its practitioners are guided by these principles, the law will continue to be a noble profession. This is its greatness and its strength, which permit of no compromise." (Emphasis added.) Similarly, the present Rules of Professional Conduct, effective October 1, 1986, state in their Preface: "The rules do not, however, exhaust the moral and ethical considerations that should inform . . . a lawyer [but] simply provide a framework for the ethical practice of law." Thus, "courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice." *In re Peck,* 88 Conn. 447, 457, 91 A. 274 (1914).

previously rendered and billed to her. The trial court concluded that none of the aspects of this transaction constituted professional misconduct.

In due course the dissolution action went to judgment. The defendant in that action appealed and the defendant here undertook to represent the complainant in connection with the appeal. The trial court found that the defendant had never submitted a bill to the complainant advising her of the full costs of his legal services for the appeal. On February 24, 1982, the complainant quitclaimed another 30 acre parcel to the defendant in payment of the additional legal fees. The trial court concluded that by failing to disclose fully the costs of his representation to date and by failing to make an unequivocal effort to ensure that the complainant obtained independent counsel in connection with this second transfer, the defendant was guilty of professional misconduct.

The trial court further found that on January 6, 1985, L. Warfield Ogden had offered to buy the complainant's home for $250,000, provided that the complainant took back a purchase money mortgage of $37,500. On the advice of the defendant, the complainant rejected this offer. Ogden thereafter amended his offer by eliminating the purchase money mortgage. The defendant, however, at a later meeting with Ogden's attorney, informed him that the complainant was unwilling to repair the roof and that the defendant himself was considering purchasing the property. The complainant had, in fact, offered to sell the property to the defendant several times in the past. Ogden thereafter withdrew his offer.

On January 18, 1985, the defendant sent a letter to the complainant indicating that there were outstanding legal fees of about $5300. The trial court also found

that on January 22, 1985, the defendant signed a contract with the complainant to sell him her home for $232,500 with a credit of $7500 for roof repairs and damage done by a tenant. The defendant had arranged for attorney Walter Gradowski to represent the complainant in connection with the transaction but had not first informed Gradowski that he would be representing the complainant. The defendant thereafter provided all the essential terms of the contract to Gradowski. Although the closing date had originally been set for March 1, 1985, the closing date was moved to March 4, because the complainant was unable to vacate by the earlier date. On March 2, 1985, the defendant prepared a statement of the balance due for his legal services in connection with the appeal and for work still in progress. This bill totaled $7900. Gradowski incorporated this sum into the closing statement. This was unacceptable to the complainant who refused to close at that date. The trial court determined that the defendant had made no disclosure to her that she would be responsible for some or all of these legal fees at the closing, that some of the fees related to cases not yet completed, and that no invoice for the most recent legal services had been provided to the complainant prior to March 2, 1985. The trial court concluded that the defendant was guilty of professional misconduct in that he had overreached his client in advancing his own interests, by failing to inform the complainant of his fees until the closing date and by discouraging a potential buyer. Based upon all of the foregoing, the trial court then ordered the defendant's suspension for three months.

The defendant has appealed, claiming that the trial court improperly: (1) denied the defendant's motion to dismiss the presentment for failure to comply with Practice Book § 31 (a); (2) made findings on issues not contained in the presentment; and (3) made incorrect

factual findings relative to the claim that he had committed misconduct in the purchase of the complainant's house. The defendant also claimed that DR 1-102 (A) (6) and DR 7-101 (A) of the Code of Professional Responsibility are unconstitutionally vague and violate the fourteenth amendment to the United States constitution. We affirm the judgment of the trial court.

I

The defendant first claims that the presentment should have been dismissed for failure to comply with Practice Book § 31 (a). Practice Book § 31 (a) states, in pertinent part: "Any interim proceedings to the contrary notwithstanding, a hearing on the merits of the [presentment] *shall* be held within sixty days of the date the complaint was filed with the court." (Emphasis added.)

The relevant dates are as follows. On April 28, 1988, the grievance committee filed the presentment. On May 23, 1989, we remanded the matter to the trial court for a hearing on the merits. On February 20, 1990, the hearing commenced, twenty-two months after the presentment was filed and nine months after we ordered the remand. The defendant argues that the language of § 31 (a) mandates dismissal under these circumstances.

The rules of statutory construction apply equally to statutes and rules of practice; *Grievance Committee* v. *Trantolo,* 192 Conn. 15, 22, 470 A.2d 228 (1984); and in the interpretation of statutes the word "shall" may have a meaning that is directory rather than mandatory. *Fidelity Trust Co.* v. *BVD Associates,* 196 Conn. 270, 278, 492 A.2d 180 (1985). "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other

words, whether it relates to a matter of substance or a matter of convenience. *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345 (1951). If it is a matter of substance, the statutory provision is mandatory. *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451, 190 A.2d 591 (1963). If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. *Winslow* v. *Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789 (1956). 'Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply.' *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75 (1969)." *Fidelity Trust Co.* v. *BVD Associates,* supra, 278.

Practice Book § 31 (a) is designed to encourage order and dispatch in the prosecution of presentments. This section is cast in affirmative words, contains no penalty for noncompliance and purports only to establish a time limit for acting upon complaints. We conclude therefore that its terms are directory, and not mandatory, and that failure to meet its time requirements does not deprive the court of jurisdiction. In the context of this case, in which the major part of the delay was due to the plaintiff's appeal and the defendant's cross appeal to this court and the trial court's attempt to arrange a convenient trial date for the complainant, then living overseas, we conclude that the purpose of § 31 (a), to avoid unnecessary and unreasonable delays, has been met and that the trial court did not abuse its discretion in refusing to dismiss the complaint. " 'Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers . . . . ' Consequently,

ministerial delays do not ordinarily warrant judicial abstention from dealing with the important issues raised by allegations of attorney misconduct." *Statewide Grievance Committee* v. *Rozbicki,* 211 Conn. 232, 239, 558 A.2d 986 (1989), quoting *In re Peck,* 88 Conn. 447, 457, 91 A. 274 (1914).

## II

The defendant next claims that the judgment of the trial court violates Connecticut law and the due process clause of the fourteenth amendment to the United States constitution by making findings of fact regarding issues not alleged in the presentment. Specifically, the defendant argues that the misconduct based upon the circumstances concerning the second land transfer was neither alleged in the presentment nor supported by the evidence heard at trial and that he was, therefore, denied adequate notice of the charges against him as required by the United States constitution. We disagree.

Paragraphs ten and twelve of count one of the presentment specifically allege that the complainant "in satisfaction of [his] fee for services, conveyed a second parcel of real property to the [defendant] on February 24, 1982," and that "the deed was prepared by the [defendant's] office and signed by the Complainant who was not represented by independent counsel." Therefore, contrary to the defendant's assertion, there were specific allegations in the presentment putting in issue the second land transfer. Further, "[i]t is important . . . to emphasize that the rules regulating attorney grievance procedures exist within the broader framework of the relationship between attorneys and the judiciary. . . . An attorney 'as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the priv-

ilege which has been accorded him.' *In re Peck,* 88 Conn. 447, 450, 91 A. 274 (1914)." *Statewide Grievance Committee* v. *Rozbicki,* 211 Conn. 232, 238–39, 558 A.2d 986 (1989). " ' "The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court." *In re Bowman,* 7 Mo. App. 569 [1879].' " *In re Application of Pagano,* 207 Conn. 336, 339, 541 A.2d 104 (1988). Thus, "courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice." *In re Peck,* supra, 457. "Once the complaint is made, 'the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require.' *In re Peck,* supra [452]." *Statewide Grievance Committee* v. *Rozbicki,* supra, 238–39. Thus we conclude that it was not an abuse of the court's inherent power in presentment proceedings to find that the defendant committed professional misconduct in connection with the second land transfer based upon the allegations contained in the presentment.

There is equally no merit in the defendant's further argument that the trial court's finding that he failed to disclose the costs of his services was "completely outside the issues raised in . . . the . . . trial." At trial, evidence was admitted and the defendant testified that "there was no formal bill prepared" or statement of account given to the complainant. In light of this evidence, we cannot say that the trial court abused its discretion in finding that the defendant failed to submit a bill for these services.

The defendant further claims that the allegations in the presentment were so imprecise that the subsequent court proceedings violated his constitutional rights to

due process. In the context of presentment actions, " '[d]ue process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded.' *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 176, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). 'In [presentment] proceedings such as this a defendant is entitled *to notice* of the charges against him, *to a fair hearing,* and a fair determination, in the exercise of sound judicial discretion, of the questions at issue, and *to an appeal* to this court for the purpose of having it determined whether or not he has in some substantial manner been deprived of such rights.' *Grievance Committee of the Bar of New Haven County* v. *Sinn,* 128 Conn. 419, 422, 23 A.2d 516 (1941)." (Emphasis added.) *Statewide Grievance Committee* v. *Presnick,* 215 Conn. 162, 169, 575 A.2d 210 (1990).

The trial court's conclusions were based upon allegations concerning the defendant's behavior in connection with the complainant's transfer to him of the 30 acre parcel and the later transfer of the complainant's home to him. The presentment apprised the defendant that these two transactions were the basis of the grievance committee's allegations of misconduct. There is no question that the factual circumstances that served as the basis of the grievance committee's allegations and the trial court's eventual conclusions were known to the defendant, that all aspects of the two transactions were completely developed at the hearing, and the defendant was given a full opportunity to respond. Under these circumstances, we conclude that the requirements of due process were met. *In re Application of Courtney,* 162 Conn. 518, 523, 294 A.2d 569 (1972).

## III

The defendant's third claim is that the trial court's findings in relation to the third count of the presentment were incorrect. Count three alleged that the defendant was guilty of professional misconduct by "determining all of the details of his purchase of the Complainant's home and arranging for her to be represented by counsel to avoid the appearance of a conflict of interest."

The trial court found that the complainant and the defendant entered into an agreement in which the complainant agreed to sell the defendant her home for $232,500. The trial court further found that while the complainant was not economically disadvantaged by the sale, the defendant did receive a "special benefit" on the purchase price in connection with a credit for damage done by a prior tenant. The trial court concluded that these benefits would not have been obtained by a third party buyer in an arm's length transaction.

The trial court further found that the defendant had dictated all of the details of his purchase of the complainant's home and had arranged for her to be represented by another attorney after the terms of the contract had been established unilaterally by the defendant. The trial court also determined that the sale of the property was designed to serve as a vehicle for the payment of expenses that the defendant had not yet disclosed to the complainant and that related to work not completed. The trial court concluded that the evidence was "clear and convincing that [the defendant] overreached in the contract negotiations to advance his own interest [in] that he did not inform the Complainant of his outstanding legal fees or the full amount of monies owed to him until after the original

closing . . . and that he discouraged a potential buyer
. . . and that [the defendant] did not obtain intelligent
informed consent from Complainant prior to entering
into this business relation with her."

The defendant again argues that the trial court's con-
clusions relate to factual issues not raised in the
presentment and are unsupported by the facts. The
defendant specifically claims that the finding that he
determined the details of the contract is incorrect
because the contract was prepared not by the defend-
ant, but by a third party attorney. The defendant fur-
ther claims that the finding that he received a special
benefit, in and of itself, is insufficient to support a find-
ing that DR 5-104 had been violated.

In its memorandum of decision the trial court did not
say that the defendant actually wrote out the contract
for the sale of the house, but that "[the defendant] pro-
vided Gradowski with the essential terms and condi-
tions of the contract." In addition, the trial court did
not base its judgment that the defendant violated DR
5-104 solely upon its finding that defendant received
a special benefit. The trial court, in fact, stated that
the defendant's use of the sale as a device for obtain-
ing reimbursement for various expenses "[v]iewed
independently . . . is not inculpatory." The trial court
did conclude, however, that the evidence, *viewed as a
whole,* described a transaction in which the defendant
overreached his client to pursue his own self-interest
in violation of DR 5-104 (A) which states that: "A law-
yer shall not enter into a business transaction with a
client if they have differing interests therein . . .
unless the client has consented *after full disclosure.*"
(Emphasis added.)

" '[A]n attorney whose fitness is challenged before
the authority to which he owes and is responsible for
the privileges he enjoys, has a right to an opportunity

to be heard, a fair and dispassionate investigation, and a reasonable exercise of the judicial discretion; but his relation to the tribunal, and the character and purpose of the inquiry, are such, that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review.' " *Statewide Grievance Committee* v. *Presnick,* 216 Conn. 127, 131–32, 577 A.2d 1054 (1990), quoting *In re Durant,* 80 Conn. 140, 149–50, 67 A. 497 (1907). The defendant has not shown that the trial court's predicate findings were clearly erroneous. We therefore decline to disturb the court's conclusion that, viewed as a whole, the defendant's conduct constituted professional misconduct.

IV

The defendant's last claim is that DR 1-102 (A) (6) and DR 7-101 (A) (3) are unconstitutionally vague and violate the fourteenth amendment to the United States constitution. Disciplinary Rule 1-102 (A) (6) states: "A lawyer shall not . . . [e]ngage in any other conduct that adversely reflects on his fitness to practice law." Disciplinary Rule 7-101 (A) (3) states: "A lawyer shall not intentionally . . . [p]rejudice or damage his client during the course of the professional relationship, except as required under DR 7-102 (B)." " 'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.' " (Emphasis omitted.) *Mesquite* v. *Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982). The defendant argues that DR 1-102 (A) (6) does not articulate what constitutes conduct affecting a lawyer's fitness to practice law and that DR 7-101 (A) (3) does not indicate what conduct would prejudice or damage the complainant.

"The fact that the meaning of the language is fairly debatable is not enough to satisfy the burden of proof

[that a rule is unconstitutionally vague]." *Bottone* v. *Westport,* 209 Conn. 652, 658, 553 A.2d 576 (1989). "Lack of precision . . . is not, in or of itself, offensive to the requirement of due process." *Seals* v. *Hickey,* 186 Conn. 337, 344, 441 A.2d 604 (1982). Furthermore, "[l]awyers are chargeable for deviations from the codes governing their conduct, even though the application of the canons to particular circumstances may not be readily apparent. See *Grievance Committee* v. *Rottner,* 152 Conn. 59, 65–66, 203 A.2d 82 (1964)." *Patterson* v. *Council on Probate Judicial Conduct,* 215 Conn. 553, 567, 577 A.2d 701 (1990). Furthermore, a challenge for vagueness is determined according to the particular facts at issue. *State* v. *Proto,* 203 Conn. 682, 696, 526 A.2d 1297 (1987). In the context of this case, we conclude that an attorney should be aware that failing to inform a client of outstanding disbursements and legal fees, arranging the terms of the purchase of a client's real estate as a device to satisfy those fees, and discouraging another potential buyer is conduct that would "[p]rejudice . . . his client" and would "adversely [reflect] on his fitness to practice law" within the meaning of DR 7-101 (A) (3) and DR 1-102. Under the circumstances here readily evident, the defendant has not met his heavy burden of proof that the disciplinary rules are so vague as not to alert him that his behavior constituted professional misconduct.

The judgment of the trial court is affirmed.

In this opinion the other justices concurred.