[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is an owner of a 2.0139 acre parcel of property located in Stamford, Connecticut. The parcel had formerly been designated as an RA-1 Lot (1 acre residential lot) but, in 1985, the zoning board had redesignated the parcel as a RA-2 Lot (2 acre residential lot). No appeal was taken from that action. In April of 1991, the plaintiff applied for a zone change so as to reclassify the lot to its former RA-1 designation. The plaintiff's property was subject to restrictive covenants which provided that the parcel could not be subdivided for the purposes of transfer or sale and could only be used for residential purposes for a single family residence. A hearing on the plaintiff's application was held before the Zoning Board of the City of Stamford ("Zoning Board") on June 24, 1991 at which time counsel for the plaintiff represented that the deed restrictions would be released. Accordingly, with the approval of counsel for the plaintiff, the hearing was held open until July 8, 1991. On July 8th the Zoning Board voted to hold the record open for an additional week. On October 21, 1991, the Zoning Board voted unanimously to deny the CT Page 3027 application. The plaintiff initiated a referral to the Board of Representatives and, on January 6, 1992, the Board of Representatives acted upon a motion to approve the application which was defeated by a vote of 36 no votes with 2 abstentions.
The plaintiff then filed the present appeal asserting, inter alia, that his application for a zone change was approved, as a matter of law, on the grounds that the decision of the Zoning Board, made on October 21, 1991, did not comply with General Statutes 8-7d(a) which requires that all such decisions "shall be rendered within 65 days after the completion of such hearing."
The plaintiff is the owner of the subject property and is therefore aggrieved within the meaning of General Statutes 8-8(b). Winchester Woods Associates v. Planning and Zoning Commission, 219, 303, 308 (1991).
Connecticut municipalities may exercise zoning powers either by adopting the statutory delegation of power contained General Statutes 8-1 or municipalities may exercise zoning power by virtue of a charter authorized by a special act of the legislature. See, Tondo Connecticut Land Use Regulations, pp. 40-42 (2 Ed. 1992). "Chapter 124 of the General Statutes (8-1-8-13) is a general zoning enabling act. `[A]ny municipality may, by vote of its legislative body, adopt provisions of this Chapter and exercise through a zoning commission the powers granted thereunder.' 8-1. This court construed this statute, "as requiring of the municipality's legislative body an affirmative act in which the intent to utilize the zoning provisions of the general enabling act is expressed." Puskarz v. Zoning Board of Appeals, 155 Conn. 360,364-365 (1967).
In 1947, the General Assembly passed a Special Act which provided the City of Stamford with its Charter #25 Spec. Acts No. 312 (January Session 1947). Section 200 of the Act vested the Board of Representatives with the legislative power of Stamford's government and the Act also contained, in Section 550, provisions relating to the powers and duties of the Zoning Board and further provided that the Zoning Board shall have such other powers and duties as are granted to zoning commissions under the General Statutes. In 1951, the General Assembly passed another Special Act which amended the Stamford Charter. 26 Special Acts #440 (1951). Section 2 of the 1951 Special Acts provided, in relevant part, that: CT Page 3028
 "Chapter 20 of said number 312 of the special acts of 1947 is amended by adding thereto the following section to be known as section 204. If, on or before December 1, 1951, the Zoning Board shall adopt a code of zoning ordinances for the City of Stamford. [sic] said code shall be passed by the zoning board without any publication provided public hearings on the same shall be held after such ordinances are introduced."
In 1951, Stamford adopted its zoning regulations.
In 1953, the General Assembly passed another Special Act that amended Stamford's Charter with respect to zoning. 26 Special Acts No. 619. Section 555 of the 1953 Special Acts sets forth procedure to be followed by the Zoning Board when rendering decisions and provides, in part, "[T]he Zoning Board shall render a decision on all petitions for amendments to the Zoning Regulations and map within 60 days after the last public hearing thereon." This Section was incorporated in Stamford's City Charter as Section C 6-40-15 (formerly Section C-555). Accordingly, the City of Stamford is exercising such powers as has been expressly granted by the legislature.
The Connecticut legislature "does discriminate between those" provisions it wants applied to all towns on one hand, and those it chooses to impose only on statutory towns, on the other, by specifically making certain sections applicable to all towns regardless of the form in which the zoning power was delegated to them." Tondo, supra at 43. General Statutes 8-7d does not expressly impose its time limitations on special act towns.
Section 1 of the Stamford Zoning Regulations states the purposes of Stamford's Zoning Code and concludes with the following statement:
 "and for said purposes to divide the city into zoning districts of such number, shape and area as may be deemed best suited to carry out these regulations and to provide for their enforcement, all in accordance with Chapter 29 of the 1947 Supplement to the General Statute as amended and supplemented and other applicable Special Acts of the General Assembly. This Code and these Regulations are further authorized, promulgated and adopted under Special Acts No. 312 of the General Assembly being the Stamford Charter consolidating the Town and the City of Stamford, Connecticut, as amended by CT Page 3029 Special Acts No. 440 adopted by the 1951 Session of the General Assembly, as further amended by Special Act No. 619 adopted by the 1953 Session of the General Assembly, and as further amended by Special Act No. 10 of the 1955 Special Session of the General Assembly." (Emphasis supplied).
However, the "Purpose" Section of the Zoning Regulations, without more, is insufficient to constitute an affirmative act of the Stamford legislative body to evidence an intent to adopt the Zoning Regulations of the General Statutes. (See Puskarz v. Zoning Board of Appeals, supra.) Accordingly, the court holds that the time limitations imposed upon the Zoning Board are those contained in the Stamford Charter and not those contained in the statutes. (See Winslow v. Zoning Board, 143 Conn. 381 (1956).
The issue remains as to whether the provisions of C-6-40-15 of the Stamford Charter which provides that the Zoning Board shall "render a decision within 60 days" is mandatory or directory. In statutory interpretation, "the word `shall' may have a meaning that is directory rather than mandatory." Statewide Grievance Committee v. Rozbicki, 219 Conn. 473, 480, cert. denied ___ U.S. ___,112 S.Ct. 1170, 117 L.Ed.2d 416 (1992). In determining whether a statute is mandatory or directory, the applicable test is whether "the prescribed mode of action is of the essence of the thing to be accomplished, or, in other words, whether it relates to a matter of substance or a matter of convenience. Karen v. Inland Wetlands and Watercourses Commission, 222 Conn. 269, 273 (1992). If it relates to a matter of substance, the statutory provision is mandatory." Statewide Grievance Committee v. Rozbicki, supra at 481.
Time limits have been held to be mandatory, "so that a land use agency's failure to comply with it results in the automatic approval of the application in three situations: (1) the statute contains express language invalidating belated action by the agency or automatically approving an application not acted upon within the requisite time period; (2) the statute contains a provision requiring an applicant's consent for an extension of the statutory time period; . . . and (3) the statute incorporates by reference another statute that contains automatic approval or consent to extension language, thereby creating an express administrative linkage to the mandatory requirement." (internal citations omitted) Karen v. Inland Wetlands Watercourses Commission, supra at 273-274. CT Page 3030
The situations described in Karen do not apply in the present case and, the court holds that the time limit provisions contained in the Stamford Charter are directory and not mandatory. See, Winslow v. Zoning Board, supra at 388; Broadmoor Housing Inc., v. Zoning Board, 1 C.S.C.R. 175 (1986) (Dean, J.). Accordingly, the failure to comply with those provisions does not result in automatic approval of the application filed by the plaintiff.
The plaintiff also refers to a claim that unless he is granted automatic approval of his zone change application, denied equal protection under the law. However, the plaintiff has failed to raise the issue in his complaint. The plaintiff may only rely upon what he alleged and may only prevail on the grounds of recovery alleged in the complaint. Matthews v. F.M.C. Corporation,190 Conn. 700, 705 (1987); Atlantic Richfield Co. v. Canaan Oil Co.,202 Conn. 234, 344 (1987); Tehrani v. Century Medical Center P.C.,7 Conn. App. 301, 308 (1986). Accordingly, the court does not reach the constitutional issues referred to by the plaintiff.
The plaintiff also claims that the Board of Representatives acted arbitrarily, capriciously and in abuse of its discretion by upholding the decision of the Zoning Board. When a Commission renders a decision on an application for a change of zone it is acting in a legislative capacity. Burnham v. Planning Zoning Commission, 189 Conn. 261, 265 (1983). A trial court cannot substitute its own judgment with the liberal discretion invested in the local authority acting within its described legislative function. Frito Lay Inc., v. Planning Zoning Commission,206 Conn. 2554, 272 (1988).
The Zoning Board forwarded the information upon which it based its denial of the plaintiff's application to the Board of Representatives. The letter accompanying the information packet states in part,:
 "The Zoning Boards findings and reasons for disapproving this application are clearly presented in the staff report (Exhibit 12); and the Environmental Protection Board Reports (Exhibit 9 and 23); and in the unanimous disapproval recommendation of the Planning Board (Exhibit 8). Chief among these reasons are the environmental limitations of the general area (wetlands, slopes, ledge and concern for the effective operation of on-lot septic systems and wells, and the prevention of contamination of a public water supply watershed. See in particular correspondence from Stamford CT Page 3031 Environmental Protection Board (Exhibits 9 and 23). Sound management of public drinking water supply watersheds relies upon controlling development densities to the lowest practical level to avoid incremental and accumulative impacts to water quality. It is insufficient and impractical to attempt to set zoning standards on an individual parcel basis."
 The Zoning Board, in voting unanimously to disapprove this application, strongly believes that an RA-2 zoning is most appropriate for this type of rural, watershed area. These same environmental principals were applied in the 1985 comprehensive rezoning of North Stamford into larger RA-2 and RA-3 Lot sizes."
The record evidence before the Board of Representatives supports is decision to uphold the Zoning Board its denial of the plaintiff's application.
The plaintiff's appeal is therefore dismissed.
RUSH, J.