JOHN C. KUCEJ *v.* STATEWIDE GRIEVANCE COMMITTEE
(15446)

Callahan, C. J., and Borden, Palmer, McDonald and Peters, Js.

450

Argued September 27—officially released December 17, 1996

451

*Roger J. Frechette,* with whom was *Matthew E. Frechette,* for the appellant (plaintiff).

*Daniel B. Horwitch,* statewide bar counsel, for the appellee (defendant).

PALMER, J. The plaintiff, John C. Kucej, an attorney, appeals from the judgment of the trial court dismissing his appeal from the reprimand issued to him by the defendant, the statewide grievance committee.[1] The plaintiff challenges the trial court's determination that the defendant properly concluded that he had violated rules 1.15 and 8.4 of the Rules of Professional Conduct.[2] We affirm the judgment of the trial court.

The relevant facts are undisputed. The plaintiff represented Charles G. Berdan (Berdan) in a marital dissolution action against the complainant in this case, Susan M. Berdan (complainant). In 1989, the trial court, *W. Sullivan, J.,* rendered judgment in that action dissolving the marriage and requiring Berdan to quitclaim his interest in the marital residence to the complainant. The

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] The professional rights and obligations of attorneys practicing within Connecticut are governed by the Rules of Professional Conduct, which were adopted in 1986 by the judges of the Superior Court. *Statewide Grievance Committee* v. *Shluger,* 230 Conn. 668, 674 n.11, 646 A.2d 781 (1994). Rule 1.15 of the Rules of Professional Conduct, which regulates the safekeeping of property by an attorney, provides in relevant part: "(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

Rule 8.4 of the Rules of Professional Conduct, which enumerates proscribed attorney conduct, provides in relevant part: "It is professional misconduct for a lawyer to . . . (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

complainant, in turn, was required to give Berdan a note secured by a second mortgage on the marital home in the amount of $90,000 (mortgage funds), the note and mortgage to be paid upon the complainant's sale of the property. The judgment also required Berdan to pay periodic alimony and child support to the complainant.

In 1990, the complainant filed a motion for contempt after Berdan had stopped making his alimony and child support payments. Thereafter, Berdan filed a motion for modification of the marital dissolution judgment. The trial court found Berdan to be in contempt and ordered him to pay the accrued arrearage. In addition, the court, relying on a financial affidavit attested to by Berdan that significantly understated his income, reduced Berdan's future alimony and child support payments.

On July 17, 1992, the complainant sold the marital residence without first notifying Berdan. Because the complainant had learned that Berdan was experiencing employment difficulties and was planning to leave Connecticut, she did not pay over the mortgage funds to Berdan but, rather, had those funds held in escrow by the buyer's attorney. Upon learning of the sale of the home, Berdan filed a motion seeking an order of contempt against the complainant for her failure to release to him the funds due on the note. In response, the complainant moved for an order requiring that the mortgage funds be held in escrow as security for Berdan's future support obligations and, in addition, that those funds not be paid to Berdan until further order of the court.

The parties' motions were scheduled for a court hearing on August 3, 1992. On August 1, 1992, however, the plaintiff delivered a letter to the complainant's attorney, Harold Bochino, requesting payment but agreeing to

hold the mortgage funds in escrow until a resolution of the parties' motions.[3] The hearing on the motions did not go forward on August 3, but Bochino, in reliance on the plaintiff's representation that he would hold the mortgage funds in escrow until the parties' motions had been resolved, caused the funds to be turned over to the plaintiff. Shortly thereafter, however, and prior to any resolution of the pending motions, the plaintiff released the mortgage funds to Berdan.

On November 12, 1992, the complainant filed a complaint with the defendant alleging that the plaintiff had violated the Rules of Professional Conduct by wrongfully advising Berdan to suspend Berdan's alimony and support payments, submitting Berdan's inaccurate financial affidavit to the court, filing harassing and unscrupulous motions, and releasing the mortgage funds to Berdan contrary to his representation that he would hold those funds in escrow until resolution of the parties' motions. The defendant forwarded the complaint to the grievance panel for the Waterbury judicial district (local panel).[4]

After considering the complaint and the plaintiff's written response,[5] the local panel concluded that there

[3] The relevant portion of the plaintiff's letter provides: "Please be advised that I will be meeting you at 10:00 a.m. on Monday, August 3, 1992, in Danbury Superior Court. I will mark the case at 9:30 a.m. I am sure that our clients, you and I, will be able to resolve this matter. Please have net check for my client which I will hold in escrow until this matter is resolved. Monday I will be in a position to discuss child support and alimony."

[4] "Each judicial district has one or more grievance panels. A grievance panel consists of two members of the bar and one layperson, all of whom are appointed by the Superior Court. General Statutes § 51-90b. A grievance panel investigates and determines whether probable cause exists for all complaints referred to [it] by the statewide grievance committee or the statewide bar counsel. General Statutes § 51-90f." Lewis v. Statewide Grievance Committee, 235 Conn. 693, 696 n.5, 669 A.2d 1202 (1996); see also Practice Book § 27B (a).

[5] The local panel did not conduct a hearing on the complainant's allegations. Although a local panel has the authority to compel testimony and document production; see Practice Book § 27B (d) (2); it is not required to

was probable cause to believe that the plaintiff's submission of Berdan's inaccurate financial affidavit constituted a violation of rules 3.1 and 3.3 (a) (4) of the Rules of Professional Conduct.[6] The local panel, however, made no findings with respect to the complainant's other allegations, including her claim that the plaintiff had improperly released the mortgage funds to Berdan.[7]

The local panel forwarded its findings to the defendant as required by Practice Book § 27F (g) and General Statutes § 51-90f.[8] The defendant, in accordance with

conduct a hearing prior to deciding whether probable cause exists that an attorney is guilty of misconduct. See *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 169–70, 575 A.2d 210 (1990).

[6] Rule 3.1 of the Rules of Professional Conduct provides: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established."

Rule 3.3 of the Rules of Professional Conduct provides in relevant part: "(a) A lawyer shall not knowingly . . . (4) Offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."

[7] The local panel's notice to the plaintiff informing him that it had found probable cause that his submission of Berdan's inaccurate financial affidavit violated the Rules of Professional Conduct contained no mention of the complainant's three other charges of impropriety, including the plaintiff's alleged mishandling of the mortgage funds. The parties, however, agree that the local panel's failure to make any express findings with respect to those remaining allegations constituted a determination of no probable cause as to those claims.

[8] Practice Book § 27F (g) provides: "The panel shall, within ninety days from the date the complaint was referred to it, file the following with the statewide grievance committee: its written determination concerning whether probable cause exists that the respondent is guilty of misconduct, a copy of the complaint and response, a transcript of any testimony heard by the panel, a copy of any investigatory file and copies of any documents, transcripts or other written materials which were available to the panel. These materials shall constitute the panel's record in the case. The panel may file a motion for extension of time not to exceed thirty days with the statewide grievance committee which may grant the motion only upon a finding of good cause. If the panel does not complete its action on a complaint

Practice Book § 27J (a) and General Statutes § 51-90g (a),[9] referred the case to a reviewing committee chaired by Lynda Munro (Munro reviewing committee)[10] for a hearing pursuant to § 27J (c) and § 51-90g (a).[11] At the conclusion of that hearing, the Munro reviewing committee found that the evidence failed to establish that the plaintiff's submission of Berdan's financial affidavit constituted a violation of rules 3.1 and 3.3 of the Rules of Professional Conduct. The Munro reviewing committee concluded, however, that there was probable cause to believe that the plaintiff's release of the mortgage funds to Berdan constituted a violation of rules 1.15 and 8.4 of the Rules of Professional Conduct. See footnote 2.

---

within the time provided in this rule, the statewide grievance committee shall inquire into the delay and shall order that the panel take action on the complaint forthwith, or order that the complaint be forwarded to and heard by another panel or a reviewing committee designated by the statewide grievance committee."

General Statutes § 51-90f contains substantially similar provisions.

[9] Practice Book § 27J (a) provides in relevant part: "Upon receipt of the record from a grievance panel, the statewide grievance committee may assign the case to a reviewing committee which shall consist of at least three members of the statewide grievance committee, at least one third of whom are not attorneys."

General Statutes § 51-90g (a) contains substantially similar provisions.

[10] At the time, Munro was a practicing attorney. She is currently a judge of the Superior Court.

[11] Practice Book § 27J (c) provides: "If the grievance panel determines that probable cause exists that the respondent is guilty of misconduct, the statewide grievance committee or the reviewing committee shall hold a hearing on the complaint. If the grievance panel determines that probable cause does not exist, the statewide grievance committee or the reviewing committee shall review the determination of no probable cause, take evidence if it deems it appropriate and, if it determines that probable cause does exist, shall take the following action: (1) if the statewide grievance committee reviewed the grievance panel's determination, it shall hold a hearing concerning the complaint or assign the matter to a reviewing committee to hold the hearing; or (2) if a reviewing committee reviewed the grievance panel's determination, it shall hold a hearing concerning the complaint or refer the matter to the statewide grievance committee which shall assign it to another reviewing committee to hold the hearing. All hearings following a determination of probable cause shall be public and on the record."

General Statutes § 51-90g (a) contains substantially similar provisions.

The Munro reviewing committee notified the plaintiff that a hearing would be held on those charges at a later date.

The plaintiff filed a written objection to the Munro reviewing committee's probable cause finding. The basis of the objection was that the Munro reviewing committee had exceeded its authority in reviewing the local panel's determination of no probable cause. The defendant overruled the plaintiff's objection and notified the plaintiff that his failure to hold the mortgage funds in escrow would be the subject of a hearing before a second reviewing committee chaired by attorney Thomas Cloutier (Cloutier reviewing committee).[12]

On November 10, 1993, the Cloutier reviewing committee conducted a hearing on the complainant's allegation that the plaintiff had improperly released the mortgage funds to Berdan. The plaintiff, the complainant and her counsel, Bochino, testified at the hearing. On January 14, 1994, the Cloutier reviewing committee issued a proposed decision in which it concluded that there was clear and convincing evidence that the plaintiff had released the mortgage funds in violation of rules 1.15 and 8.4 of the Rules of Professional Conduct. The Cloutier reviewing committee recommended that the plaintiff be reprimanded. After considering the plaintiff's objections to the proposed decision, the defendant voted to adopt that decision and, accordingly, issued a reprimand to the plaintiff.

The plaintiff appealed from the defendant's decision to the Superior Court, claiming that: (1) the Munro reviewing committee exceeded its authority in reviewing the local panel's finding of no probable cause regarding his release of the mortgage funds to Berdan; (2) the reprimand was barred by principles of res judi-

---

[12] No member of the Cloutier reviewing committee had been a member of the Munro reviewing committee.

cata and collateral estoppel; (3) the reprimand violated his federal constitutional rights to due process; and (4) the defendant abused its discretion in concluding that his release of the mortgage funds constituted a violation of rules 1.15 and 8.4 of the Rules of Professional Conduct. The trial court, *Maloney, J.*, rejected these claims and dismissed the plaintiff's appeal. On appeal to this court, the plaintiff renews each of the claims he raised in the trial court. Because we agree with the trial court that those claims are without merit, we affirm the trial court's judgment.

I

The plaintiff first claims that the Munro reviewing committee lacked authority to consider the local panel's finding of no probable cause with respect to his release of the mortgage funds. We disagree.

The plaintiff's claim is predicated on two Practice Book provisions: § 27J (c),[13] which provides that either the defendant *or* a reviewing committee shall review a determination of no probable cause by a local panel; and § 27J (i),[14] which authorizes dismissal of the complaint by the defendant if, upon its direct review of a local panel's findings of no probable cause, it concurs with the local panel's determination. The plaintiff maintains that, in this case, the defendant, upon receipt of

[13] Practice Book § 27J (c) also provides that either the defendant or a reviewing committee shall conduct a public hearing on any determination of probable cause by a local panel. See footnote 11.

[14] Practice Book § 27J (i) provides: "If the statewide grievance committee does not assign a complaint to a reviewing committee, it shall have one hundred and twenty days from the date the panel's determination concerning probable cause was filed with it to render a decision dismissing the complaint, imposing sanctions and conditions as authorized by Sec. 27M.1 or directing the statewide bar counsel to file a presentment against the respondent. The decision shall be a matter of public record. The failure of the reviewing committee to complete its action on a complaint within the period of time provided in this section shall not be cause for dismissal of the complaint."

the local panel's findings, (1) referred the local panel's *probable cause* findings to the Munro reviewing committee for that committee's initial review and, at the same time, (2) conducted its own direct review of the local panel's *no probable cause* findings, concluding that the no probable cause findings were proper. On the assumption that the defendant had itself reviewed and approved the local panel's no probable cause findings, the plaintiff maintains that the Munro reviewing committee exceeded its authority in reviewing the local panel's findings of no probable cause and substituting its finding of probable cause with regard to the plaintiff's release of the mortgage funds.[15]

The plaintiff's claim fails because it is factually unsupported. The administrative record is devoid of persuasive evidence indicating that the defendant reviewed the merits of the local panel's findings of no probable cause or, indeed, that it took any action on the local panel's findings other than to forward them to the Munro reviewing committee for review. Furthermore,

---

[15] We note that the trial court understood the plaintiff's claim to be a purely legal one, characterizing it as follows: "In effect, the plaintiff reads the first and second sentences of § 27J (c) as mutually exclusive; that is, if the [local] panel finds probable cause on one charge and no probable cause on others, he claims that the reviewing committee may not consider those charges." In rejecting the plaintiff's argument, the trial court, therefore, did not address the issue of whether the Munro reviewing committee lacked authority to review the local panel's no probable cause findings for the sole reason urged by the plaintiff on appeal, namely, that the defendant had itself reviewed and approved the local panel's findings of no probable cause. Although the plaintiff filed a motion for reargument in which he sought to explain that he had, in fact, made the claim in the trial court that he now articulates on appeal, the trial court denied the plaintiff's motion, and the plaintiff never sought an articulation under Practice Book § 4051. Accordingly, the trial court made no specific factual findings regarding the issue of whether the defendant had already reviewed and approved the local panel's no probable cause findings prior to referring the complaint to the Munro reviewing committee. We nevertheless consider the plaintiff's claim as he has framed it on appeal because the statewide bar counsel has not objected to our doing so.

the defendant's decision to adopt the Cloutier reviewing committee's recommendation that the plaintiff be reprimanded for violating rules 1.15 and 8.4 of the Rules of Professional Conduct belies the plaintiff's claim that the defendant had earlier concluded that no probable cause existed for that violation.[16]

The evidence upon which the plaintiff primarily relies to support his claim is an informational enclosure that accompanied the letter sent to him by the statewide bar counsel notifying him of the date and time of the hearing before the Munro reviewing committee.[17] The enclosure, which consisted of several explanatory paragraphs describing the procedures to be followed by the reviewing committee, included the following representations: "The subject for review at the hearing will only be the issue or issues related to the probable cause finding. Please refer to the letter issued either by the grievance panel or [by] the Statewide Grievance Committee setting forth the probable cause finding. The probable cause finding may not include every allegation of misconduct made in the complaint. If a particular claim of misconduct did not result in a finding of probable cause, that claim will not be considered by the reviewing committee, nor will testimony be accepted on that claim."[18] The plaintiff claims that these statements

---

[16] Because the plaintiff did not clearly articulate this claim in the trial court; see footnote 15; neither the plaintiff nor the statewide bar counsel sought to establish whether the defendant conducted any substantive review of the local panel's findings of no probable cause before forwarding the case to the Munro reviewing committee. The statewide bar counsel maintains, however, that the defendant did not order a bifurcated review of the local panel's findings but, rather, referred all of the local panel's findings—including its findings of no probable cause—to the Munro reviewing committee.

[17] In his brief, the statewide bar counsel describes the enclosure as a boilerplate "informational insert" used by the defendant to provide respondent attorneys with general information about the procedures employed by reviewing committees of the defendant. We have no reason to reject this representation.

[18] The plaintiff also asserts that he was advised by chairperson Munro at the commencement of the reviewing committee's hearing that the scope of

conclusively establish that the defendant had reviewed and approved the local panel's no probable cause findings prior to referring the complaint to the Munro reviewing committee because otherwise there would be no reason for him to have received notification that the reviewing committee would not consider the local panel's no probable cause findings.[19] On the basis of this construction of the enclosure, the plaintiff concludes that because the defendant had itself already conducted a final review of the local panel's no probable cause findings, the Munro reviewing committee lacked the authority to do so.

As the statewide bar counsel acknowledged in oral argument, the representations in the informational enclosure were misleading insofar as they suggested that the Munro reviewing committee would take no action regarding the local panel's no probable cause findings, and we disapprove of them for that reason.[20] The enclosure to the statewide bar counsel's letter, however, does not compel the conclusion that the defendant actually reviewed the local panel's finding

that hearing would be limited to the probable cause findings of the local panel. Although a transcript of the proceedings before the Munro reviewing committee has not been made part of the record on appeal, the statewide bar counsel does not dispute this assertion.

[19] The plaintiff also asserts that his claim is supported by the local panel's representation, contained in its letter to the plaintiff notifying him of its probable cause determination, that his "file has been forwarded to the [defendant] for its *review*, and that [the defendant] will contact you directly." (Emphasis added.) The plaintiff, however, reads too much into the local panel's use of the term "review." The local panel was required to forward its file and findings to the defendant; see Practice Book § 27F (g); so that the defendant could decide whether to conduct a substantive review of the local panel's findings or, instead, to refer the findings to a reviewing committee. See Practice Book § 27J (a). Because the local panel's letter neither states nor implies anything more, we reject the plaintiff's contention that it provides support for his claim.

[20] At oral argument, the statewide bar counsel indicated that the misleading language will be deleted from future correspondence regarding hearings before a reviewing committee.

of no probable cause relating to the mortgage funds and dismissed those charges prior to forwarding the complaint to the Munro reviewing committee.[21] In the absence of any evidence in the record indicating that the defendant in fact reviewed any of the local panel's findings before forwarding the matter to the Munro reviewing committee, we reject the plaintiff's claim that that committee exceeded its authority in conducting such a review.

## II

The plaintiff also claims that the Munro reviewing committee was precluded by principles of res judicata and collateral estoppel from considering the local panel's findings of no probable cause.[22] Specifically, the plaintiff asserts that because the defendant had already reviewed the local panel's determination of no probable cause prior to forwarding the complaint to the Munro reviewing committee, the Munro reviewing committee's review of the local panel's findings was redundant and contrary to our judicial system's recognized interest in minimizing repetitive litigation. We have already rejected the plaintiff's contention, however, that the defendant reviewed and approved the local panel's no probable cause findings before referring the complaint to the Munro reviewing committee.[23] The factual premise underlying the plaintiff's claim, therefore, is without foundation.

---

[21] On appeal, the statewide bar counsel asserts that the challenged representations were not intended to convey the impression that the Munro reviewing committee would refrain from reviewing the local panel's findings of no probable cause but, rather, that those findings would not be the subject of any argument or testimony at the hearing.

[22] We have previously noted that basic concepts of res judicata are generally applicable to presentment proceedings. See *Statewide Grievance Committee* v. *Presnick*, 216 Conn. 135, 139, 577 A.2d 1058 (1990).

[23] We need not determine, therefore, whether principles of res judicata or collateral estoppel would otherwise have been applicable to the circumstances of this case.

## III

The plaintiff next maintains that his federal due process rights were violated because the notice he received from the statewide bar counsel concerning the scope of the hearing before the Munro reviewing committee caused him reasonably to believe that that committee would not review the local panel's findings of no probable cause,[24] thereby depriving him of a meaningful opportunity to contest the complainant's allegation that he had improperly released the mortgage funds.[25] We disagree.

Because a license to practice law is a vested property interest and disciplinary proceedings are "adversary proceedings of a quasi-criminal nature," an attorney subject to discipline is entitled to due process of law. *In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 20 L. Ed. 2d 117, modified on other grounds, 392 U.S. 919, 88 S. Ct. 2257, 20 L. Ed. 2d 1380 (1968); *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 306, 627 A.2d 901 (1993). The determination of the particular process that is due depends on the nature of the proceeding and the interests at stake. *Goldberg* v. *Kelly*, 397 U.S. 254, 268–69, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). "In attorney disciplinary proceedings, two interests are of paramount importance. On the one hand, we must not tie the hands of grievance committees and trial courts with procedural requirements so strict that it becomes virtually impossible to discipline an attorney for any but the most obvious, egregious and public misconduct. On the other hand, we must ensure that attorneys subject to disciplinary action are afforded the

[24] As we have already noted, chairperson Munro also indicated that the local panel's findings of no probable cause would not be the subject of the hearing before her reviewing committee.

[25] We note that the plaintiff failed to raise this claim in the trial court. Because the statewide bar counsel has not objected to our consideration of the claim, however, we address it.

full measure of procedural due process required under the constitution so that we do not unjustly deprive them of their reputation and livelihood." *Statewide Grievance Committee* v. *Botwick*, supra, 307.

Generally, "[b]efore discipline may be imposed, an attorney is entitled to notice of the charges, a fair hearing and an appeal to court for a determination of whether he or she has been deprived of these rights in some substantial manner. . . ." (Citations omitted; internal quotation marks omitted.) Id., 308. Notice of the nature of the charges must be reasonable and the attorney must be apprised of them before the proceedings commence. Id. If sufficient notice is not provided, attorney grievance proceedings can "become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh." *In re Ruffalo*, supra, 390 U.S. 551.[26]

With these principles in mind, we turn to the plaintiff's claim that his due process rights were violated because he had been led to understand that he would not have to defend against those charges for which the local panel had not found probable cause. Although we acknowledge that it was reasonable for the plaintiff to have believed that the Munro reviewing committee would not be reviewing the local panel's no probable cause findings, the plaintiff nevertheless points to no evidence—and our careful review of the record has revealed none—tending to establish that he was prejudiced as a result of that misunderstanding. In conducting its review of the local panel's findings, the Munro reviewing committee was not required to afford the

---

[26] This rule is not applicable where an attorney's conduct is malum in se, because a reasonably prudent attorney would know that such behavior was actionable. *Statewide Grievance Committee* v. *Botwick*, supra, 226 Conn. 308 n.9.

plaintiff an evidentiary hearing by any statutory or Practice Book provision. See General Statutes § 51-90g (a); Practice Book § 27J (c).[27] More importantly, however, the plaintiff was afforded a full and fair opportunity to challenge the Munro reviewing committee's probable cause findings before a second reviewing committee comprised of a different group of the defendant's members. In light of the fact that the plaintiff was afforded a de novo hearing by the Cloutier reviewing committee and, thereafter, a review of that committee's proposed decision by all of the defendant's members, the plaintiff has failed to establish that he was in any way prejudiced by the Munro reviewing committee's consideration of the local panel's findings of no probable cause.[28] See *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 677, 646 A.2d 781 (1994); *Statewide Grievance Committee* v. *Rozbicki*, 219 Conn. 473, 484, 595 A.2d 819 (1991), cert. denied, 502 U.S. 1094, 112 S. Ct. 1170,

---

[27] The plaintiff has not challenged the constitutionality of the provisions of § 51-90g (a) and § 27J (c) authorizing the defendant and its reviewing committees to reverse a local panel's finding of no probable cause without affording the respondent attorney a hearing. Cf. *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 169–70, 575 A.2d 210 (1990).

[28] The plaintiff argues that because he testified at the hearing before the Munro reviewing committee without knowledge that it would be reviewing the local panel's no probable cause findings, any testimony that he gave at that hearing concerning his release of the mortgage funds could have been used against him by the Munro reviewing committee or the Cloutier reviewing committee. The record on appeal contains no transcript of the plaintiff's testimony before the Munro reviewing committee, however, and the plaintiff has not otherwise attempted to establish that he did in fact testify about the mortgage funds at that hearing. Indeed, because the plaintiff failed to raise this claim in the trial court; see footnote 25; neither party sought to adduce any evidence with regard to this claim. Furthermore, even if the plaintiff did testify about the mortgage funds at the hearing before the Munro reviewing committee, he has made no showing whatsoever that any such testimony was considered by either reviewing committee. In fact, our review of the record has failed to reveal any indication that the Cloutier reviewing committee had any such testimony before it. Cf. *In re Ruffalo*, supra, 390 U.S. 551–52 (violation of procedural due process where presentment amended solely on basis of attorney's testimony at disciplinary proceeding).

117 L. Ed. 2d 416 (1992). Thus, this is not a case wherein the plaintiff's procedural due process rights were violated because he was required to defend himself against charges of which he had not received adequate notice. Cf. *Statewide Grievance Committee* v. *Botwick*, supra, 226 Conn. 311 (violation of procedural due process where presentment did not provide notice of offense for which attorney sanctioned). Accordingly, we reject the plaintiff's constitutional claim.

## IV

The plaintiff's final claim is that the Cloutier reviewing committee and the defendant could not reasonably have concluded that the plaintiff's release of the mortgage funds to Berdan violated rules 1.15 and 8.4 of the Rules of Professional Conduct.[29] We disagree.

Before addressing the plaintiff's claim, we note the limited scope of our review as prescribed by Practice Book § 27N (f): "Upon appeal, the court shall not substi-

[29] The proposed decision of the Cloutier reviewing committee, which the defendant adopted, provides in relevant part: "By obtaining the funds in which his client had an interest from Attorney Bochino through the use of his August 1, 1992 letter and subsequently disbursing those funds to his client when he knew the [c]omplainant had a reasonable interest in those funds, the [plaintiff] violated Rule 1.15 (b) of the Rules of Professional Conduct. By advising Attorney Bochino that the [plaintiff] would maintain the funds in escrow until the issue of the funds was resolved and thereafter disbursing the funds to his client, the [plaintiff] violated the misrepresentation provision of Rule 8.4 (c) of the Rules of Professional Conduct. We do not find reasonable the [plaintiff's] interpretation of his letter that he intended to convey that he would only hold the funds for the next two days unless the court acted on his and Attorney Bochino's motions. It is our opinion that the only reasonable interpretation of the letter is that the [plaintiff] would safeguard the funds until the parties were able to resolve the dispute among themselves or until the court acted on either the [plaintiff's m]otion [f]or [c]ontempt or the [complainant's m]otion [f]or [s]ecurity. Given the [c]omplainant's concerns about the money in question, as evidence[d] by her [m]otion [f]or [s]ecurity, we do not find it reasonable that the [plaintiff] would expect the money would be released to him under the terms he asserts were intended to be set forth in his letter."

tute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional, Practice Book or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ." "Thus, in reviewing a decision of the statewide grievance committee to issue a reprimand, neither the trial court nor this court takes on the function of a fact finder. Rather, our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct. . . ." (Citation omitted; internal quotation marks omitted.) *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 812, 633 A.2d 282 (1993).

Applying these principles to this case, we conclude that the trial court properly determined that the facts found by the Cloutier reviewing committee and adopted by the defendant are supported by clear and convincing evidence, and that their conclusions are legally and logically correct. As the trial court concluded, the Cloutier reviewing committee reasonably determined that the plaintiff's release of the mortgage funds to Berdan was contrary to the plaintiff's express, written representation that he would hold those funds in escrow until the parties' motions had been resolved. Under these circumstances, the plaintiff's misrepresentation violated rules 1.15 and 8.4 of the Rules of Professional

Conduct.[30] Accordingly, the plaintiff's challenge to the reprimand issued by the defendant for that conduct is without merit.

The judgment is affirmed.

In this opinion the other justices concurred.

[30] The plaintiff maintains that he was obligated to release the mortgage funds to his client under the terms of the marital dissolution judgment. As the trial court stated, however, "[t]he Cloutier reviewing committee concluded . . . that the complainant had subsequently acquired 'a reasonable interest in those funds' based on the potential threat to the alimony and child support payments due from [Berdan] in the future. [That] committee found further that the plaintiff was aware of this interest. There was abundant clear and convincing evidence to support [that] committee's factual findings in this regard. The [defendant] did not abuse its discretion, therefore, in reprimanding the plaintiff for disregarding the complainant's interests under the circumstances of this case."