### DAVID M. SOMERS v. STATEWIDE GRIEVANCE COMMITTEE
### (SC 15804)

Callahan, C. J., and Borden, Berdon, Katz, Palmer, McDonald and Peters, Js.

278

Argued January 13—officially released July 14, 1998

*Mark H. Dean*, for the appellant (plaintiff).

*Cathy A. Dowd*, assistant bar counsel, for the appellee (defendant).

*Opinion*

PALMER, J. The plaintiff, David M. Somers, an attorney, appeals from the judgment of the trial court dismissing his appeal from the reprimand issued to him by the defendant, the statewide grievance committee, for violating rule 3.4 (7) of the Rules of Professional Conduct.[1] We conclude that the defendant's determination that the plaintiff had committed a violation of rule

---

[1] "The professional rights and obligations of attorneys practicing within Connecticut are governed by the Rules of Professional Conduct, which were adopted in 1986 by the judges of the Superior Court." *Kucej* v. *Statewide Grievance Committee*, 239 Conn. 449, 451 n.2, 686 A.2d 110 (1996), cert. denied, 520 U.S. 1276, 117 S. Ct. 2457, 138 L. Ed. 2d 214 (1997). Rule 3.4 of

3.4 (7) was improperly predicated, at least in part, on certain irrelevant factual findings. Consequently, we reverse the judgment of the trial court and direct that the case be remanded to the defendant for a new hearing on the complaint.

The record discloses the following pertinent facts. The plaintiff originally was retained to represent H.P. Townsend Manufacturing Company (Townsend). Townsend, however, ceased doing business in August, 1991, due to a court-ordered replevin of assets. Thereafter, Kimberly Barrett, who had been employed by Townsend and had served as its corporate secretary, formed

---

the Rules of Professional Conduct provides: "Fairness to Opposing Party and Counsel.

"A lawyer shall not: (1) Unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

"(2) Falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

"(3) Knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

"(4) In pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

"(5) In trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or

"(6) Request a person other than a client to refrain from voluntarily giving relevant information to another party unless:

"(A) The person is a relative or an employee or other agent of a client; and

"(B) The lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information;

"*(7) Present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.*" (Emphasis added.)

The Rules of Professional Conduct were renumbered as part of the 1998 revision to the Connecticut Practice Book. All references in this opinion to the Practice Book, including all references to the Rules of Professional Conduct, are to the 1998 revision.

two corporations, TCE Corporation (TCE) and MT Assembly Corporation (MT). The plaintiff's secretary, Gigette Coudriet, purchased Townsend's assets and subsequently conveyed them to TCE and MT in exchange for promissory notes and leases. Coudriet later assigned her interest in the notes and leases to the plaintiff.

In February, 1994, the plaintiff instituted a civil action against TCE and MT to collect monies allegedly owed to him pursuant to the promissory notes and leases. In May, 1994, the plaintiff commenced a second civil action against TCE and MT to replevy the assets that had been leased to the two corporations. The plaintiff thereafter joined Barrett as a defendant in both actions on the theory that she personally was liable for the corporations' allegedly tortious conversion of the leased property.[2]

On June 21, 1994, the plaintiff telephoned the West Hartford police department and informed Detective William Kinahan that he wished to file a criminal complaint for larceny by conversion of leased property in violation of General Statutes § 53a-119 (13).[3] After providing Kinahan with certain documents relative to the alleged

---

[2] Because the plaintiff's two civil actions are so closely related, we hereinafter refer to them in the singular.

[3] General Statutes § 53a-119 provides in relevant part: "Larceny defined. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . .

"(13) Conversion of leased property. (A) A person is guilty of conversion of leased personal property who, with the intent of converting the same to his own use or that of a third person, after renting or leasing such property under an agreement in writing which provides for the return of such property to a particular place at a particular time, sells, conveys, conceals or aids in concealing such property or any part thereof, and who thereafter fails to return such property to the agreed place or to any other place of business of the lessor within one hundred ninety-two hours after the lessor shall have sent a written demand to him for the return of the property by registered or certified mail addressed to him at his address as shown in the written

conversion, the plaintiff, on June 28, 1994, filed a criminal complaint against Barrett, TCE and MT.[4] At that time, Kinahan advised the plaintiff that he thought the matter should be pursued through the civil action rather than through the criminal process.[5]

On June 30, 1994, Kinahan obtained additional information from the plaintiff regarding his complaint. Shortly thereafter, Kinahan brought the complaint to the attention of assistant state's attorney Mark Brodsky,[6] who concurred with Kinahan's opinion that the matter was civil, rather than criminal, in nature. On July 1, 1994, Kinahan notified the plaintiff that, as a consequence of Brodsky's determination, no further action would be taken by the West Hartford police or by the local office of the state's attorney regarding the complaint. Kinahan, however, recommended that the plaintiff contact the economic crimes unit of the chief state's attorney's office if he wished to pursue the matter further. The plaintiff then contacted the economic crimes unit, which referred him to assistant state's attorney Edward Narus, who was assigned to the office of the state's attorney in Hartford.[7] Between July and

agreement, unless a more recent address is known to the lessor. (B) Any person, being in possession of personal property other than wearing apparel, received upon a written lease, who, with intent to defraud, sells, conveys, conceals or aids in concealing such property, or any part thereof, shall be prima facie presumed to have done so with the intention of converting such property to his own use. . . . (D) 'Leased personal property', as used in this subdivision, means any personal property received pursuant to a written contract, by which one owning such property, the lessor, grants to another, the lessee, the right to possess, use and enjoy such personal property for a specified period of time for a specified sum."

[4] Hereinafter, we will refer to the criminal complaint filed against Barrett, TCE and MT as against Barrett only.

[5] We note that the plaintiff never threatened Barrett with the filing of the complaint.

[6] Brodsky, a member of the office of the state's attorney for the judicial district of Hartford-New Britain, was assigned to geographical area number sixteen at West Hartford.

[7] The plaintiff testified that he originally spoke to the head of the economic crimes unit of the chief state's attorney's office, but that individual referred the matter to Narus because of Narus' expertise in economic crime cases.

October, 1994, the plaintiff provided Narus with information and documentation in support of his criminal complaint against Barrett.

In the meantime, on July 11, 1994, Barrett, on behalf of herself, TCE and MT, filed a complaint with the defendant alleging that the plaintiff had violated rule 3.4 (7) of the Rules of Professional Conduct by presenting or threatening to present criminal charges solely to obtain an advantage in a civil matter.[8] In accordance with Practice Book § 2-29 (a) and General Statutes § 51-90f, the defendant forwarded Barrett's complaint to the grievance panel for the Hartford-New Britain judicial district (local panel).[9]

On September 8, 1994, a hearing was conducted on the plaintiff's application for a prejudgment remedy in his civil action against Barrett, TCE and MT. At that hearing, the parties stipulated to an injunction prohibiting Barrett from selling, conveying or concealing the assets of the two corporations. After the plaintiff had notified Narus of the injunction, Narus, by letter dated November 3, 1994, advised the plaintiff that he would take no further action on the plaintiff's criminal complaint against Barrett in light of the fact that Barrett had not attempted to sell, convey or conceal the corporate assets.

On February 22, 1995, the local panel, after considering Barrett's complaint and other information supplied

---

[8] Hereinafter, the complaint filed against the plaintiff by Barrett on behalf of herself, TCE and MT will be referred to as Barrett's complaint.

[9] "Each judicial district has one or more grievance panels. A grievance panel consists of two members of the bar and one layperson, all of whom are appointed by the Superior Court. . . . A grievance panel investigates and determines whether probable cause exists for all complaints referred to [it] by the statewide grievance committee or the statewide bar counsel." (Citation omitted.) Lewis v. Statewide Grievance Committee, 235 Conn. 693, 696 n.5, 669 A.2d 1202 (1996).

by Barrett and the plaintiff,[10] notified the plaintiff that it had concluded that there was probable cause to believe that he had violated rule 3.4 (7) of the Rules of Professional Conduct.[11] On June 8, 1995, a reviewing committee conducted a hearing on Barrett's complaint in accordance with Practice Book § 2-35.[12] The reviewing committee heard testimony from the plaintiff, Kinahan, Barrett and Elaine Stuhlman, Barrett's attorney.

At the hearing, the plaintiff testified that he had filed two criminal complaints with the West Hartford police department, one against Coudriet and one against Barrett, for larceny by conversion of leased property. He explained that the police had concluded that there was probable cause to believe that Coudriet improperly had withheld monies due and owing to the plaintiff under the leases, and that they had planned to arrest her unless she returned the money. Coudriet thereafter returned the money.

The plaintiff also testified about his reasons for filing the criminal complaint against Barrett. The plaintiff

---

[10] The local panel was not required to conduct a hearing on Barrett's allegations, and it did not do so. See *Kucej* v. *Statewide Grievance Committee*, 239 Conn. 449, 453–54 n.5, 686 A.2d 110 (1996), cert. denied, 520 U.S. 1276, 117 S. Ct. 2457, 138 L. Ed. 2d 214 (1997).

[11] The local panel also concluded that probable cause existed to believe that the plaintiff improperly had used information gathered in connection with his representation of Barrett, TCE and MT in violation of rule 1.8 and/or rule 1.9 of the Rules of Professional Conduct. For reasons that are not directly relevant to this appeal, however, the defendant concluded that it was appropriate to consider the plaintiff's alleged violation of only rule 3.4 (7). Accordingly, this appeal concerns only the plaintiff's alleged violation of rule 3.4 (7).

[12] Practice Book § 2-35 provides in relevant part: "(a) Upon receipt of the record from a grievance panel, the statewide grievance committee may assign the case to a reviewing committee which shall consist of at least three members of the statewide grievance committee, at least one third of whom are not attorneys. . . .

"(c) If the grievance panel determines that probable cause exists that the respondent is guilty of misconduct, the statewide grievance committee or the reviewing committee shall hold a hearing on the complaint. . . . All

stated that he had told Kinahan that Barrett had sent him a letter in January, 1994, acknowledging the plaintiff's ownership of the assets, but that later Barrett had asserted her ownership of those same assets. According to the plaintiff, he concluded that it was necessary to seek a criminal investigation of the matter in order to protect his property, and because it might take years to obtain a civil remedy. In addition, the plaintiff testified that he had researched the applicable criminal statutes and had determined that persons engaged in conduct similar to that of Barrett had been prosecuted for larceny by conversion. He further stated that he would not have pursued the criminal complaint if he had not sincerely believed that Barrett had intended unlawfully to convert his property, a belief that he held in part because, according to the plaintiff, Barrett had "a history of doing that." The plaintiff also noted that he understood that the decision whether to prosecute rested exclusively with the state's attorney because, as he testified, "[it is] the interest of the public [that the state is] representing, not my personal interests."

The plaintiff further stated that he had told Kinahan that the civil case could be rendered moot if he received restitution in the criminal case, but that the criminal and civil cases were unrelated. The plaintiff, however, also indicated that he did not intend to withdraw his civil claim regardless of the disposition of his criminal complaint because he was seeking treble damages and attorney's fees in the civil case.

According to the plaintiff, he had continued to pursue his complaint with the economic crimes unit of the chief state's attorney's office, even after Barrett had stipulated to the injunction, because he was not persuaded that the injunction adequately protected his

---

hearings following a determination of probable cause shall be public and on the record."

interests. The plaintiff stated that subsequent to the issuance of the injunction, he had been informed by Narus that Narus' office had decided not to file criminal charges against Barrett because: (1) the legislature did not intend for every misappropriation of property to be prosecuted criminally; (2) the injunction provided the plaintiff with adequate protection; and (3) there was no evidence to establish that Barrett had concealed, conveyed or sold the property.[13] The plaintiff also testified, however, that Narus had expressed a willingness to review any additional information regarding the matter that the plaintiff might wish to bring to Narus' attention in the future.

Kinahan testified that he had told the plaintiff that assistant state's attorney Brodsky had advised him that the matter was essentially civil in nature and that no further criminal investigation was warranted. Kinahan further stated that he had recommended that the plaintiff contact the economic crimes unit of the chief state's attorney's office if he wanted to pursue the matter further. Kinahan also recalled that the plaintiff had stated that he would not press the criminal complaint if the issue was resolved civilly.

Barrett testified that she believed that the plaintiff had filed the complaint to scare or threaten her. Barrett further stated that she was frightened by the prospect of a criminal investigation of the plaintiff's complaint. Finally, Barrett's attorney testified that Barrett had been "highly intimidated" by the plaintiff's criminal complaint against her.

Following the hearing, the reviewing committee issued a proposed decision in which it found by clear and convincing evidence that the plaintiff had violated

---

[13] The sale, concealment or conveyance of leased property is an element of the crime of larceny by conversion of leased property. See footnote 3 of this opinion.

rule 3.4 (7) "by participating in presenting criminal conversion charges against [Barrett, TCE and MT] solely to obtain an advantage in the civil conversion complaint [that] the [plaintiff] had filed against [Barrett, TCE and MT]." The reviewing committee also stated that "[w]e cannot conclude, based upon the evidence presented . . . that the [plaintiff] had a good faith belief that [Barrett] had committed criminal conversion and that he was pursuing the criminal charges for reasons other than to gain an advantage in the civil suit." In support of its conclusions, the reviewing committee expressly relied on the following factual findings: (1) the plaintiff pursued the criminal complaint with the economic crimes unit of the chief state's attorney's office even after having been advised by Kinahan that he and Brodsky did not believe that the facts supported a criminal prosecution; (2) the plaintiff continued to press the criminal complaint with the knowledge that a prejudgment remedy hearing had been scheduled in his civil action; (3) there was no evidence in the record indicating that Barrett ever actually had conveyed, concealed or sold the assets in violation of § 53a-119 (13); (4) the plaintiff had told Kinahan that he would not pursue the criminal complaint if his civil case was resolved, and he indicated in his testimony that he intended to pursue the civil action regardless of the disposition of the criminal complaint; (5) the plaintiff previously had filed a similar criminal complaint against Coudriet; and (6) Barrett believed that the plaintiff had filed the criminal complaint in an attempt to intimidate and threaten her.

The defendant, acting pursuant to General Statutes § 51-90h and Practice Book § 2-36, adopted the reviewing committee's proposed decision in all material respects and issued a reprimand to the plaintiff. The plaintiff appealed from the defendant's decision to the Superior Court, claiming that: (1) rule 3.4 (7) does not apply to an attorney who is acting pro se; and (2) the

facts adduced by the defendant do not support a finding by clear and convincing evidence that the plaintiff had filed his criminal complaint against Barrett solely to obtain an advantage in his civil action. The trial court rejected the plaintiff's claims and, consequently, dismissed his appeal.

On appeal to this court,[14] the plaintiff renews the claims that he made in the trial court. Although we conclude, contrary to the plaintiff's contention, that his conduct in representing himself is subject to the prohibitions of rule 3.4 (7), we agree with the plaintiff that the defendant's decision rests in part on certain factual findings that do not support an inference of professional misconduct. Accordingly, we conclude that the case must be remanded to the defendant for a new hearing on the grievance complaint against the plaintiff without regard to those facts upon which it improperly relied.

I

The plaintiff first claims that rule 3.4 (7) is not applicable in the circumstances of this case because the plaintiff was acting on his own behalf when he filed the complaint against Barrett and not on behalf of a client. We disagree.

Rule 3.4,[15] which is entitled "Fairness to Opposing Party and Counsel," contains no contextual suggestion that it is applicable to an attorney only when the attorney is representing a client and not when he or she is acting pro se. Although some of our attorney disciplinary rules apply only when a lawyer is acting in a representative capacity; see, e.g., *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 236, 578 A.2d

---

[14] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[15] See footnote 1 of this opinion.

1075 (1990) (by its express terms, rule 4.2 of the Rules of Professional Conduct, which proscribes communication between an attorney and a represented party, applies only when the attorney is representing a client); there is no indication, either in the language of rule 3.4 or in the relevant commentary to the rule, that the rule's prohibitions are inapplicable when the attorney is acting pro se rather than representing a client.[16]

Moreover, as the commentary to rule 3.4 states, the rule is designed to promote "[f]air competition in the adversary system [by] secur[ing] prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like." Because the conduct proscribed by rule 3.4 is incompatible with the principle of fair competition that forms the basis of our adversary system of justice, an attorney who acts in contravention of the rule cannot justify that conduct on the basis that it was intended to benefit himself or herself rather than a client. See *Brunswick* v. *Inland Wetlands Commission*, 222 Conn. 541, 553, 610 A.2d 1260 (1992) (attorneys, by virtue of their unique position as court officers, have a duty to conduct themselves responsibly whether they represent themselves or others).

With specific regard to subdivision (7) of rule 3.4, we can discern no reason, and the plaintiff has suggested

[16] As the plaintiff notes, rules 3.1 through 3.9 of the Rules of Professional Conduct are listed under the heading "Advocate." The plaintiff maintains that because an "advocate" may be defined as "one that pleads the cause *of another* before a tribunal or judicial court"; (emphasis added) Webster's Third New International Dictionary; rules 3.1 through 3.9 must be construed to apply only to attorneys who are acting in a representative capacity. This argument, however, ignores a second definition of the word "advocate," namely, "one that argues for, defends, maintains, or recommends a cause or proposal." Id. Under that definition, an advocate need not be representing the interests of another but, rather, may be acting on his or her own behalf. We see no reason, therefore, why an attorney may not be considered an "advocate" when that attorney is representing his or her own interests and not those of a client.

none, why an attorney admitted to practice in this state should be permitted to present criminal charges solely to obtain an advantage in a civil matter merely because the attorney, and not a client, has an interest in that civil matter.[17] The conduct contemplated by rule 3.4 (7) is prohibited because it is deemed to be unfairly coercive and, therefore, an abuse of the criminal process; such conduct is no less coercive when it is engaged in by an attorney who is acting pro se rather than in a representative capacity.[18] As an officer and commissioner of the court, an attorney is obliged to refrain from using such improper tactics whether acting in a personal or representative capacity.[19] Accordingly, we reject the plaintiff's claim that rule 3.4 (7) is inapplicable in the circumstances of this case because the plaintiff was representing himself when he filed the criminal complaint against Barrett.

## II

The plaintiff next challenges the trial court's determination that the evidence relied on by the defendant was

[17] The plaintiff also has failed to cite any case law or other authority to support his claim.

[18] The relevant commentary to the Code of Professional Responsibility, which governed the conduct of attorneys in this state prior to the adoption of the Rules of Professional Conduct; see footnote 1 of this opinion; also is instructive in light of the fact that rule 3.4 (7) contains exactly the same language as disciplinary rule 7-105 (A) of the Code of Professional Responsibility. That commentary, contained in ethical consideration 7-21, explains the purpose of disciplinary rule 7-105 (A) as follows: "Threatening to use, or using the criminal process to coerce adjustment of private civil claims or controversies is a subversion of [the criminal] process [and] the person against whom the criminal process is so misused may be deterred from asserting his [or her] legal rights and thus the usefulness of the civil process in settling private disputes is impaired. As in all cases of abuse of judicial process, the improper use of criminal process tends to diminish public confidence in our legal system."

[19] Moreover, other courts have imposed sanctions under provisions identical or substantially similar to rule 3.4 (7) in circumstances in which an attorney has filed, or threatened to file, criminal charges for the purpose of gaining an advantage in the attorney's own civil matter rather than in

sufficient to warrant a finding that the plaintiff had violated rule 3.4 (7). The plaintiff's claim is twofold. First, that in reaching its decision, the defendant improperly relied on certain factual findings that do not support an inference of misconduct, and second, that the other factual findings upon which the defendant predicated its decision are insufficient to establish by clear and convincing evidence that the plaintiff filed the criminal complaint against Barrett solely to obtain an advantage in his civil action against her. We agree with the plaintiff's first claim, but we are not persuaded by his second contention.

At the outset, we note that "in reviewing a decision of the statewide grievance committee to issue a reprimand, neither the trial court nor this court takes on the function of a fact finder. Rather, our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct. . . . Additionally, in a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the [Rules] of Professional [Conduct] is clear and convincing evidence. . . . The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Statewide Grievance Committee*, 235 Conn. 693, 698, 669 A.2d 1202 (1996); see Practice Book § 2-38 (f). "[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt

connection with a client's civil matter. See, e.g., *Bluestein* v. *State Bar*, 13 Cal. 3d 162, 529 P.2d 599, 118 Cal. Rptr. 175 (1974); *People* v. *Farrant*, 852 P.2d 452 (Colo. 1993); *Florida Bar* v. *Flynn*, 512 So. 2d 180 (Fla. 1987); *State* v. *Rohrig*, 159 Iowa 725, 139 N.W. 908 (1913).

in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Wildwood Associates, Ltd.* v. *Esposito*, 211 Conn. 36, 42, 557 A.2d 1241 (1989). With these principles in mind, we turn to the plaintiff's claims.

The plaintiff first contends that the defendant improperly relied upon certain factual findings in reaching its decision because those findings do not support an inference of misconduct in violation of rule 3.4 (7). Specifically, the plaintiff claims that the defendant's decision was predicated upon the following allegedly irrelevant facts: (1) the plaintiff had lodged a criminal complaint with the economic crimes unit of the chief state's attorney's office even though he previously had been informed by Kinahan that he and Brodsky had concluded that the matter was civil, rather than criminal, in nature; (2) the plaintiff had continued to pursue his criminal complaint notwithstanding the fact that a hearing had been scheduled on his application for a prejudgment remedy in his civil action against Barrett; (3) the plaintiff had told Kinahan that he would not press the criminal complaint if the civil case was resolved and he indicated in his testimony that he did not intend to withdraw his civil action regardless of the disposition of the criminal complaint; (4) the plaintiff previously had filed a similar criminal complaint against Coudriet; and (5) Barrett believed that the plaintiff had filed the criminal complaint to intimidate her. We address each of these claims in turn.

First, we agree with the plaintiff that the defendant improperly relied on the fact that the plaintiff had pursued his criminal complaint against Barrett with the economic crimes unit of the chief state's attorney's

office. Although Kinahan had informed the plaintiff that he and Brodsky had concluded that the matter should be pursued civilly rather than criminally, Kinahan testified that he had "recommended" to the plaintiff that the plaintiff "seek some guidance from or . . . contact" the economic crimes unit if the plaintiff wanted to pursue the complaint further. In light of Kinahan's suggestion that the plaintiff could contact the economic crimes unit regarding the matter, no adverse inference reasonably can be drawn against the plaintiff for having done so.

We also agree with the plaintiff that the defendant reasonably could not have drawn an inference adverse to the plaintiff merely because the plaintiff continued to pursue his criminal complaint against Barrett after a hearing had been scheduled on his application for a prejudgment remedy in his civil action. Rule 3.4 (7) does not prohibit an attorney from simultaneously pursuing a criminal complaint and a civil action against the same party unless the attorney's sole reason for filing the criminal complaint is to seek an advantage in the civil action. In this case, there is no claim that the plaintiff's application for a prejudgment remedy was improper, and his decision to seek such a remedy bears no logical relation to the question of whether his reason for pursuing the criminal complaint was solely to gain an advantage in the civil case. Moreover, until the entry of the stipulated injunction on the date of the scheduled hearing on the plaintiff's application for a prejudgment remedy, the plaintiff had no judicial protection against Barrett's alleged concealment, sale or conveyance of the assets.[20] Thus, the fact that the plaintiff pursued his

---

[20] We note that the plaintiff acknowledged in his testimony that he had continued to provide Narus with documentation in support of his criminal complaint against Barrett even after the entry of the stipulated injunction on September 8, 1994, which prohibited Barrett from concealing, selling or otherwise conveying the property. Narus, upon learning of the injunction, notified the plaintiff on or about November 3, 1994, that his office would

complaint after a hearing had been scheduled on his prejudgment remedy application does not support an inference that his pursuit of the criminal complaint against Barrett violated rule 3.4 (7).[21]

The plaintiff next argues that the defendant improperly relied on the fact that the plaintiff had: (1) told Kinahan that he would not press his criminal complaint upon resolution of the civil case; and (2) testified that he would not withdraw the civil action regardless of the ultimate disposition of his criminal complaint.[22] As to the first statement, we agree with the defendant that the plaintiff's statement to Kinahan that he would not pursue the criminal complaint if the civil case was resolved tends to show that the plaintiff, in filing the criminal complaint, may have been motivated by his civil dispute with Barrett. Therefore, the defendant was entitled to rely on that evidence in reaching its decision regarding the defendant's motive for filing the criminal complaint. We do not agree, however, that the plaintiff's testimony regarding his intention to pursue his civil claims regardless of the resolution of the criminal complaint is probative of the reason why he filed the criminal complaint. The plaintiff was entitled to pursue

take no further action on the plaintiff's complaint. Because the plaintiff's assets were judicially protected from concealment or conveyance as of the date of the injunction, the fact that the plaintiff continued to pursue his criminal complaint after that date might tend to show that the plaintiff was using the criminal process only to obtain an advantage in his civil action. In its decision concluding that the plaintiff had violated rule 3.4 (7), however, the defendant relied only on the fact that the plaintiff had continued to pursue the criminal complaint "with the knowledge that a civil conversion complaint was pending with a [prejudgment remedy] hearing scheduled for September of 1994." As we have indicated, that fact alone does not support an inference that the plaintiff had pursued his criminal complaint solely to advance his civil action.

[21] We express no view regarding what weight, if any, the defendant may wish to attribute to the fact that the plaintiff continued to pursue his criminal complaint against Barrett *after* the entry of the stipulated injunction. See footnote 20 of this opinion.

[22] We treat these two distinct pieces of testimonial evidence together because the defendant did so in its factual findings.

whatever civil remedies he may have had against Barrett, including damages and attorney's fees. In light of the fact that these remedies were available to the plaintiff only in connection with his civil action, it was impermissible for the defendant to draw an inference adverse to the plaintiff solely on the basis of his intention to pursue those remedies.[23]

The plaintiff also contends that the fact that he previously had filed a similar criminal complaint against Coudriet does not support an inference that he filed his complaint against Barrett for an improper purpose. Although the defendant's decision contains no explanation as to why the plaintiff's complaint against Coudriet had any bearing on his complaint against Barrett, we presume that the defendant relied on the Coudriet filing as evidence that the plaintiff had engaged in a pattern of lodging criminal complaints solely for the purpose of achieving an advantage in pending civil matters. The record, however, is barren of any indication that the plaintiff's complaint against Coudriet violated rule 3.4 (7), or that it otherwise was in any way improper. On the contrary, the sole evidence regarding the plaintiff's complaint against Coudriet is the plaintiff's uncontradicted testimony that the police decided not to charge Coudriet criminally solely because she had paid the

---

[23] We note that the defendant concluded that these statements by the plaintiff indicate "that the [plaintiff] *was primarily concerned with the civil conversion complaint against [Barrett]*." (Emphasis added.) That the plaintiff may have been *primarily* concerned with the civil conversion action against Barrett would not establish a violation of rule 3.4 (7) because that rule prohibits an attorney from lodging a criminal complaint *solely* to obtain an advantage in a civil matter. We conclude, however, that the defendant's use of the word "primarily" in evaluating one of the factors that it deemed to be relevant to its review of Barrett's complaint is not fatal to the defendant's ultimate determination that the plaintiff's conduct had violated rule 3.4 (7), in light of the defendant's express finding that the plaintiff had "participat[ed] in presenting criminal conversion charges against [Barrett] *solely* to obtain an advantage in the civil conversion complaint the [plaintiff] had filed against [Barrett]." (Emphasis added.)

plaintiff the money that he had claimed she owed him. Because there is nothing in the record from which the propriety of the plaintiff's complaint against Coudriet may be challenged, that complaint provides no support for the defendant's determination that the plaintiff's complaint against Barrett was improperly motivated.

We agree with the plaintiff that Barrett's subjective belief that the plaintiff had filed the criminal complaint to frighten or harass her was irrelevant to the question of whether the plaintiff had violated rule 3.4 (7). Barrett's complaint against the plaintiff provided no explanation as to why she harbored such a belief, and her testimony is devoid of any explanation to support her conclusion. In the absence of any reasons tending to substantiate Barrett's opinion, the defendant was not entitled to rely on her subjective belief in reaching its conclusion that the plaintiff had filed his complaint against Barrett solely to obtain an advantage in his civil action.

At oral argument, the defendant conceded that it had relied on these factual findings and, further, that it is impossible to determine precisely what weight was given to them.[24] In these circumstances, the plaintiff is entitled to a new hearing on Barrett's complaint against him based solely on the relevant evidence.[25]

The plaintiff, however, claims that the relevant facts adduced at the hearing are insufficient as a matter of

[24] As the defendant acknowledged at oral argument, and as its written decision on Barrett's complaint reflects, the defendant relied on the totality of the evidence, including the facts that we have concluded were irrelevant to its determination, in reaching its decision that the plaintiff violated rule 3.4 (7).

[25] We emphasize that, in holding that the evidence discussed above does not provide a proper basis for an inference adverse to the plaintiff, we do not determine that such evidence may not be introduced for the purpose of giving the fact finder the entire relevant context of the plaintiff's conduct. We determine only that the particular evidence that we have discussed does not provide a proper basis for such an adverse inference, and may not, therefore, be relied on for such an inference.

law to support a finding that he violated rule 3.4 (7). Consequently, the plaintiff maintains that we should remand the case to the trial court with direction to sustain his appeal. The defendant takes a contrary view, claiming that the following probative evidence is sufficient to support a conclusion that the plaintiff lacked a good faith belief that Barrett had committed a criminal conversion and that he was pursuing the criminal charges solely to gain an advantage in his civil suit: (1) the determination of the investigating and prosecuting authorities that the plaintiff's complaint was civil, rather than criminal, in nature;[26] (2) the plaintiff's statement to Kinahan that he would be willing to withdraw the criminal complaint if the civil action was resolved; and (3) the lack of evidence that Barrett actually sold, conveyed or concealed the property.[27]

We acknowledge that this case presents a close question as to whether the relevant facts are sufficient to warrant a determination, *by clear and convincing evi-*

[26] Although we agree that this evidence was relevant to the issue of the plaintiff's motivation in lodging his criminal complaint against Barrett, we note that a prosecutor's forbearance in bringing criminal charges may be grounded, at least in part, in considerations that do not bear directly on whether the facts presented give rise to a criminal violation. These considerations include, but are not limited to, the relative seriousness of the alleged offense, limited investigative and prosecutorial resources, law enforcement priorities, and the availability of adequate alternative remedies. Thus, although the fact that the prosecuting authorities decided not to pursue criminal charges against Barrett may bear some relevance to the question of whether the plaintiff had a good faith belief that Barrett had committed, or was planning to commit, a criminal offense, that fact alone is not necessarily entitled to great weight.

[27] The defendant claims that we may affirm the judgment of the trial court dismissing the plaintiff's appeal on the ground that the remaining relevant facts are sufficient to establish a violation of rule 3.4 (7). At oral argument, however, counsel for the defendant conceded that we cannot determine how much weight the defendant afforded the factual findings upon which it improperly relied in concluding that the plaintiff had violated rule 3.4 (7). In light of that fact, we are unpersuaded by the defendant's claim that we nevertheless may sustain the trial court's judgment.

*dence*,[28] that the plaintiff's *sole* reason for filing the criminal complaint against Barrett was to obtain an advantage in his civil action against her. Because, however, the plaintiff's motive for filing the criminal complaint raises factual questions requiring careful consideration of circumstantial evidence; see *State* v. *Diaz*, 237 Conn. 518, 541, 679 A.2d 902 (1996) ("[o]rdinarily, intent can only be inferred by circumstantial evidence; it may be and usually is inferred from [a person's] conduct"); and because our review of the defendant's factual findings is limited to a determination of whether those findings are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record"; *Lewis* v. *Statewide Grievance Committee*, supra, 235 Conn. 697; we are unwilling to pass judgment on the fact-bound issue raised by this case, namely, the reason or reasons why the plaintiff filed the criminal complaint against Barrett, without first affording the defendant the opportunity to reconsider that question in light of all *relevant* evidence produced at a new hearing.[29] We conclude, therefore, that

[28] "The phrase 'clear, substantial and convincing evidence' fairly characterizes that degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [T]he burden of persuasion is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *State* v. *Bonello*, 210 Conn. 51, 66, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 2103, 104 L. Ed. 2d 664 (1989).

[29] We do not suggest, by reciting the relevant factual findings upon which the defendant properly may rely at a new hearing, that the defendant, at that new hearing, necessarily will be bound to limit its review of the grievance complaint solely to those findings. On the contrary, the defendant shall be entitled to consider any relevant evidence that may be adduced at the new hearing, by either party, regardless of whether that evidence was presented at the original hearing. Practice Book § 2-38, which governs appeals by an attorney from the issuance of a reprimand by the statewide grievance committee or a reviewing committee, expressly provides that if the trial court finds that the attorney's rights have been substantially prejudiced by

the case must be remanded to the defendant[30] for a determination of Barrett's complaint upon consideration of the relevant evidence only.[31]

The judgment is reversed, and the case is remanded to the trial court with direction to sustain the appeal and to remand the matter to the defendant for a new hearing on the complaint.

the improper "findings, inferences, conclusions or decisions" of the statewide grievance committee or the reviewing committee, the court "shall sustain the appeal and, if appropriate, rescind the action of the statewide grievance committee or *take such other action as may be necessary*." (Emphasis added.) Practice Book § 2-38 (f). In light of the breadth of the remedy available to the trial court under § 2-38 (f), we see no reason why a new hearing should be limited to the evidence that had been adduced at the original hearing. Moreover, to limit the defendant's consideration, on remand, solely to the facts and findings upon which it reasonably relied in rendering its original decision would be inconsistent with how we treat other civil, criminal and administrative proceedings when, as in this case, (1) the matter has been remanded for a new trial or hearing because the fact finder based its decision, at least in part, upon irrelevant or otherwise improper evidence, and (2) the relevant evidence adduced at the original trial or hearing was not clearly insufficient to support a determination adverse to the party aggrieved by the fact finder's decision. Accordingly, either party may adduce additional evidence at the new hearing.

[30] In order that the plaintiff shall be assured a fair and impartial hearing on remand, we direct, pursuant to our inherent authority to regulate attorney conduct; see *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 238–39, 558 A.2d 986 (1989); that any referral of this matter by the defendant to a reviewing committee; see footnote 12 of this opinion; shall be to a newly constituted committee.

[31] The dissent asserts that "[t]he requirement that the criminal complaint be used to pressure an opposing party is inherent in rule 3.4 (7)." On the basis of this assertion, the dissent then concludes that the evidence relied on by the defendant failed to establish that the plaintiff had exerted pressure on Barrett to resolve the civil complaint. In so concluding, the dissent confuses the *purpose* of rule 3.4 (7) with the *elements* necessary to establish a violation of the rule. We agree with the dissent that the purpose of rule 3.4 (7) is to ensure that an attorney does not use the criminal process merely to pressure an opposing party to resolve a civil matter. Contrary to the view espoused by the dissent, however, an attorney necessarily exerts such improper pressure when he or she files a criminal complaint *solely to gain an advantage in the civil matter*. For the reasons that we have articulated, we are not prepared to say that the relevant evidence necessarily precludes such a determination in this case.

In this opinion CALLAHAN, C. J., and BORDEN, KATZ and PETERS, Js., concurred.

MCDONALD, J., with whom BERDON, J., joins, dissenting. I agree with the majority that the defendant, the statewide grievance committee, improperly relied on irrelevant evidence in issuing a reprimand to the plaintiff. I conclude, however, that the matter should be remanded to the trial court with direction to sustain the appeal and direct judgment for the plaintiff.

## I

I do not agree with the majority that rule 3.4 (7) of the Rules of Professional Conduct applies to the plaintiff's conduct. The plaintiff was not involved as an attorney in litigation with Barrett, but, rather, was a party represented by an attorney. The heading preceding rules 3.1 through 3.9 of the Rules of Professional Conduct is "Advocate," which is defined as "one who assists, defends, or pleads for another." Black's Law Dictionary (6th Ed. 1990). Rule 3.4 is entitled "Fairness to Opposing Party and Counsel." Every prohibited act in the first six subsections of rule 3.4 pertains to conduct of a lawyer acting as a lawyer involved in litigation. We have held that some rules apply only to a lawyer acting in his or her representative capacity. *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 236, 578 A.2d 1075 (1990). The majority now holds, however, that the conduct of a lawyer who is not acting as a lawyer on behalf of a client may violate the sole remaining subsection of rule 3.4, specifically, subdivision (7).

Rule 8.4 of the Rules of Professional Conduct properly covers the plaintiff's conduct. The heading preceding rules 8.1 through 8.5 of the Rules of Professional Conduct is "Maintaining the Integrity of the Profession," and rule 8.4 is entitled "Misconduct." Rule 8.4 was

adopted to regulate a lawyer's conduct apart from conduct in representing clients and it contains nothing comparable to rule 3.4 (7). There is no provision in rule 8.4 prohibiting an attorney from asking the authorities to investigate whether the criminal laws have been violated or from filing a criminal complaint, as anyone else may do.

## II

Should rule 3.4 (7) apply to the plaintiff's conduct, however, the admissible evidence does not support a finding that the plaintiff acted solely to obtain an advantage in a civil matter. The defendant found that the plaintiff had told the police that he would not pursue the criminal complaint if his civil case was resolved. As the majority recognizes, however, the plaintiff never communicated such an intention to Barrett. Rule 3.4 (7) prohibits a lawyer from "present[ing], participat[ing] in presenting, or threaten[ing] to present criminal charges solely to gain an advantage in a civil matter." Threatening to present criminal charges solely to obtain an advantage in a civil matter clearly requires that the threat be communicated to the opposing party for the specific purpose of gaining advantage. Presenting or participation in presenting such charges also requires pressure exerted upon the opposing party. The cases cited in footnote 19 of the majority opinion can be distinguished from this case on these grounds. In every case, the attorney communicated to the opposing party his threat to bring criminal charges; *People* v. *Farrant*, 852 P.2d 452, 454 (Colo. 1993); *State* v. *Rohrig*, 159 Iowa 725, 727, 139 N.W. 908 (1913); to file a judicial grievance; see *Florida Bar* v. *Flynn*, 512 So.2d 180, 181 (Fla. 1987); or to continue pending criminal charges; *Bluestein* v. *State Bar*, 13 Cal. 3d 162, 167, 529 P.2d 599, 118 Cal. Rptr. 175 (1974); unless that party resolved some related civil dispute. The requirement that the criminal complaint be used to pressure an opposing party is inherent in rule 3.4 (7). In the absence of such evidence, I would

direct judgment for the plaintiff. In this case, an essential element for a violation of rule 3.4 (7) was not established in this quasi-criminal proceeding, and no second chance to prove the case should be countenanced. See *In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 20 L. Ed. 2d 117, modified on other grounds, 392 U.S. 919, 88 S. Ct. 2257, 20 L. Ed. 2d 1380 (1968); *Kucej* v. *Statewide Grievance Committee*, 239 Conn. 449, 462, 686 A.2d 110 (1996), cert. denied, 520 U.S. 1276, 117 S. Ct. 2457, 138 L. Ed. 2d 214 (1997).

Accordingly, I respectfully dissent.