[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is an application for discharge or reduction of mechanics lien dated April 28, 1999. The defendants are Harbour Ridge Golf Course LLC (Harbour Ridge), MDA Harbour Ridge LLC, (MDA) and Redstone Development Corporation aka Redstone Operating LLC (Redstone).
The action was commenced by complaint of Wade Weischet DBA Beaver Logging (Beaver) dated March 17, 1999 seeking inter alia the foreclosure of the lien, possession of the premises, money damages, attorneys fees and costs, prejudgment I interest, punitive damages under Connecticut General Statutes § 42-110a et seq and such other relief as in law or equity may appertain.
The applicant asserts that the defendant Harbour Ridge is the owner of parcel 1 attached to the application which consists of fifteen (15) of eighteen (18) holes for a golf course described in Exhibit A in Wallingford Connecticut without housing; that defendant MDA is the owner of three (3) holes of the eighteen hole golf course with certain housing on it described in Exhibit B attached to the application. On November 25, 1998 Beaver placed a mechanics lien on both of the above parcels and gave notice thereof. It is further claimed that Beaver has been paid in full for the work performed on the property owned by Harbour Ridge and there is no probable cause to sustain the validity of the lien by Beaver on the property of Harbour Ridge and in the alternative this lien is excessive. (See paragraph 5). The defendants further assert damages to the property of the defendants which constitute a set off against the amounts claimed.
Wade Weischet (Wade) is the sole proprietor of Beaver. Under proposal contained in Exhibit 5 Beaver agreed with Ben Morris of Redstone Development to clear trees and brush also selective clearing and stumping with chip removal at $3,800.00 per acre. All logs, firewood, stumps and woodcbips produced became the property of Beaver and will be removed from the site, any tree removal along roads will be priced separately. "Above price is based on clearing over 50 acres" "any clearing for housing is set at $3,200.00 per acres same terms and conditions apply to golf course clearing. Exhibit 5 specifically states that Beaver would furnish all materials and labor at $3,800.00/acre golf course; CT Page 15957 $3,200.00/acre housing; $15,000.00 down, billing every 21 days, payments within 10 days of invoice. Beaver was shown acres that had to be cleared and owner was responsible for flagging the trees to be removed. Wade testified he regarded it as one job one half for housing, one half for golf course.
Ben Morris testified that the golf course is owned by Harbour Ridge and that the Housing is owned by MDA. Under cross examination it was established that Redstone is a corporation with Ben Morris and Irving Morris as the stockholders and that all bills "were directed to Redstone the general contractor for this development. From March 19, 1998 through September 3, 1998, Beaver provided labor, equipment, and materials under a single contract with Redstone for which they placed a lien on both parcels of land owned individually by Harbour Ridge and MDA in the amount of $20,740.00.
The parties stipulated at the start of trial that the lien amounts were recorded "against both parcels and that they were filed within the statutory 90 day period. Notice was given to both owners and they were served separately.
The applicant first argues that the probable cause showing under the mechanics lien statute is similar to a hearing in probable cause for a prejudgment remedy. (See Pero "Building Co.v. Smith, 6 Conn. App. 180 (1986). In Pero the court stated "The trial court is vested with broad discretion in determining whether there is probable cause to grant "such remedies." The request for a mechanic's lien is not contractual, rather it is a statutory request available to secure, as well as to enforce payment for materials and labor rendered (citations omitted) Id 185.
The applicant in this case attacks the liens on two grounds: The first ground is that by clear and convincing evidence Beaver failed to complete the contract and that the defendants must expend in excess of the amount claimed by Beaver to complete the contract and remove the materials left on the sites. In fact the amount of set off claimed is a total of $43,500.
The proposal exhibit 5 called for Beaver to remove the chips, logs and stumps after the tree cutting which Redstone claims they failed to do. Beaver received a payment of $46,710.00 on September 8, 1998 and never returned to the job site. The defendants/applicants claim in this action they have set offs and CT Page 15958 or a counterclaims against Beaver that exceed the amounts of the liens filed. Ben Morris contacted Beaver to return and remove the materials left which they failed to do. However Ted Manning (Manning) the Project Manager for Redstone who had the continuing obligation to observe Beaver's work to September 8, 1998, who also left the job about the same time as Beaver stated that he approved the billings up to the last bill of $46,710.00 which was paid to Beaver. The final bill in Exhibit 6 is for $20,740.00 dated October 26, 1998 without any explanation other than "Final billing for stump grinding and sign clearing. Ironically all billings in exhibit 6 were stamped as received by Redstone. The final billing in Exhibit 6 was never stamped and Exhibit 9 as the explanation for the amount of the lien also was never stamped. The amount of the lien of $20,740.00 is reflected only in the billing of Exhibit 9 which is dated October 26, 1998. On September 17, 1998, Exhibit O, Ben Morris indicated that "no further payments will be made to Beaver unless this situation is remedied immediately. Also if Beaver does not attend to the problems in next seven days, a new contractor will be hired, any expenses associated therewith will be deducted from any outstanding bills." The letter goes on further to indicate Beaver never handed a final bill and we, therefore, have no outstanding Beaver bills in our possession" Exhibit O is subsequent to the payment of the outstanding balance of $46,710.00 which Manning approved and was paid.
The question then falls upon whether the amount of the billing for $20,740.00 is "due and owing or whether by clear and convincing evidence it should be reduced.
Exhibit 9 although it is claimed that it was provided after the lien was filed, explains where the work was in fact done and the amounts attributed.
Manning testified when he left that the tree cutting had all been completed as to the housing and no stumps had to be grown up.
The liens however as detailed in Exhibit 9 are for work performed on holes 16 and 17 and 12 of the golf course. Sign clearing for $5,000.00 and 5 loads of chips valued at $3,500.00.
Beaver submitted on August 25, 98 a separate billing for sign clearing of agreed price of $5,000.00 to Redstone. On August 28, 1998, Exhibit 11, in a letter to counsel for Beaver, Ben Morris CT Page 15959 managing member of Harbour Ridge stated "if Beaver removes their tree stumps and trees, he will in fact be paid for all outstanding invoices due and payable immediately." Exhibit 1 authorization for payment shows $33,590 for Harbour Ridge Golf Course, LLC for housing $13,120.00 for a total of $46,710.00.
The final billing (Exhibit 9) based upon the evidence adduced at trial should be allocated against the golf course area in the amount $12,240.00 for work on holes 16, 17 and 12; $5,000 on housing for sign clearing. Beavers argument is most persuasive that this was one development project with Ben Morris wearing three different hats, president of Redstone, and managing member of Harbour Ridge and MDA. Harbour Ridge and MDA own different property boundaries but together they have an 18 hole golf course. As pointed out by Beaver the various entities involved in this matter and as to each parties responsibility is uncertain. Only Ben Morris is capable of separating who owes what on each of the LLCs and their respective property boundaries.
Stanley Tofil, who worked for Redstone under the supervision of Manning testified that there were other contractors cutting trees on the property that generated piles of material that Redstone claims only was generated by Beaver. Tofil testified that Beaver cut the trees on 16, 17 and 12 but could not pull them out because of the Wetlands Commission instructions to leave them in place. The three outstanding holes for which work was done for the final billing belong to MDA. Manning confirmed that Beaver was not paid $12,400 with respect to the golf course property. (Holes 16, 17 12)
The applicant in this case has not by clear and convincing evidence proven that the materials left in Exhibits A, B, C, and D belonged to Beaver. Tofil was uncertain as to whose material was represented in those pictures. The expense of Davis Tree and Logging Company shown in Exhibit E in the amount of $16,000.00 is not by clear and convincing evidence attributable to clearing the materials and stumps left by Beaver. It may well be that Beaver did not perform the contract by removing the stumps created after cutting down trees on holes 16, 17 and 12, however there was testimony that he was prevented from doing so by the wetlands commission. This court cannot find by clear and convincing evidence, which portion of left over material can be attributable to Beaver. The evidence in this case is that there were other contractors cutting down trees. CT Page 15960
The court recognizes that Beaver failed to return to remove the wood chips. He claims that was worth $3,500.00. This court finds failure to return for their removal would not entitle him to any lien rights, since he was put on notice to retrieve them.
The court concludes from all the evidence that the applicant has failed by clear and convincing evidence that the liens should be reduced beyond the value of the wood chips in the amount of $3,500.00.
The court cannot further find that the plaintiff in this case breached his contract by not completely removing the tree stumps on holes 16, 17 and 12 and liened only his portion of the work at $1,800.00 per hole (See Exhibit 9).
Plaintiff argues that the applicant has waived their right to assert the validity of the liens on the grounds that it is a blanket lien. For authority to this claim applicant cites NewEngland Savings Bank v. Meadow Lakes Realty Co., 44 Conn. App. 240
and Butch v. Thangamuthu, 37 Conn. App. 547.
New England Savings the trial court found that the claim was against three distinct plots of land and accordingly the mechanics lien cannot be enforced as against one plot. Citing Butch Id New England held at page 248.
"On appeal, we upheld the decision of the trial court, noting that "[n]owhere does the statute suggest that a single lot of land in a subdivided plot is subject to the payment of a claim for services rendered or materials furnished in the site development or subdivisior of the entire plot. Instead, the statute unambiguously indicates that the subdivided plot of land is the property to which a mechanic's lien must be attached when the plaintiff seeks to secure payment for materials and services provided to improve the plot being subdivided." Id., 549-50.
We further stated in Butch v. Thangamuthu, supra,37 Conn. App. 550, that "[u]nder the language of § 49-33 (a), the plaintiff had a choice of filing a blanket lien against the plot of land that had been subdivided, or filing liens against the individual lots to secure sums due for improvements to each lot. When the plaintiff chose to proceed against individual lots, he limited himself to claiming in each lien an amount commensurate with the materials furnished and services rendered to improve each individual lot." CT Page 15961
Accordingly the legal support as to the invalidity of the blanket liens in this case does not apply. As discussed earlier there was no individual areas of the contract delineated. In the minds of the contracting parties, the more likely inference to be drawn is that it was one job over two parcels, now claimed to be separate for purpose of this case.
In Butch Id at page 549 the court held "Connecticut General Statutes § 49-33 (a) [I]n the event that the materials furnished or services were rendered in site development (emphasis added) . . . ... ... . then the plot of land is subject to payment of the claim" (Internal quotations omitted).
In conclusion as the applicant concedes this is a hearing in probable cause like a prejudgment remedy. Pero supra.
"[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . ... .......[The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) Somers v. Statewide GrievanceCommittee, 245 Conn. 277, 290-91, 715 A.2d 712 (1998). "Although we have characterized this standard of proof as a "middle tier standard' . . . and as "an intermediate standard' . . . between the ordinary civil standard of a preponderance of the evidence, or more probably than not, and the criminal standard of proof beyond a reasonable doubt, this characterization does not mean that the clear and convincing standard is necessarily to be understood as lying equidistant between the two. Its emphasis on the high probability and the substantial greatness of the probability of the truth of the facts asserted indicates that it is a very demanding standard. . . . . We have a stated that the clear and convincing evidence standard "should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory.'" (Citations omitted; emphasis in original.)Miller v. Commissioner of Correction, 242 Conn. 745, 794-95,700 A.2d 1108 (1997). CT Page 15962
The applicants have not met their burden of proof to invalidate the liens but they may be reduced in the amount of $3,500.00. Further the enforcement of the lien may be limited to the property owning holes 16, 17 and 12 and the land upon which the sign removal was made.
Frank S. Meadow, J.T.R.